No. 43                November 13, 2015                147

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

SANTOS CUEVAS,
*Respondent on Review.*

(CC 09082394C; CA A149668; SC S062464)

En Banc

On review from the Court of Appeals.*

Argued and submitted February 3, 2015.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Jesse Wm. Barton, Salem, argued the cause and filed the brief for respondent on review.

Kyle Krohn, Deputy Public Defender, Salem, filed the brief for *amicus curiae* Office of Public Defense Services. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

KISTLER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

Walters, J., dissented and filed an opinion, in which Landau and Brewer, JJ., joined.

_____
  * Appeal from Malheur County Circuit Court, J. Burdette Pratt, Judge. 263 Or App 94, 326 P3d 1242 (2014).

**KISTLER, J.**

This case involves two sentencing guidelines rules. One rule directs trial courts to count a defendant's convictions at the time of sentencing in calculating the defendant's criminal history. OAR 213-004-0006(2). The other rule limits the length of a consecutive sentence that a trial court can impose. OAR 213-012-0020(2). On appeal, the Court of Appeals concluded that both rules increased defendant's sentence based on facts that, under *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), a jury must find beyond a reasonable doubt. *State v. Cuevas*, 263 Or App 94, 114, 326 P3d 1242 (2014). Although the Court of Appeals concluded that the trial court should have submitted those facts to the jury, it held that the failure to do so was harmless error. *Id.* On review, we hold that the two sentencing guidelines rules do not implicate *Apprendi* and affirm the Court of Appeals decision on that ground.

A jury convicted defendant of 10 counts of rape, sodomy, and sexual abuse.[1] When a jury finds a defendant guilty of multiple offenses, a trial court must make two related but separate sentencing decisions. One decision involves the length of the sentence for each conviction. The other involves whether the convictions should run concurrently or consecutively. Oregon has adopted statutes and sentencing guidelines rules to assist trial courts in making those decisions.

For most felony convictions, Oregon's sentencing guidelines prescribe a presumptive sentence based on the seriousness of the offense and the defendant's criminal history.[2] *See State v. Speedis*, 350 Or 424, 427, 256 P3d 1061 (2011) (describing the sentencing guidelines). The guidelines also instruct trial courts on how to calculate a defendant's criminal history. As discussed below, the guidelines provide that, when a court sentences a defendant for multiple

---

[1] The jury found that the offenses involved two different children and occurred at three separate locations. After the jury returned its verdict, the state conceded that two convictions merged into two other convictions, leaving eight convictions for sentencing.

[2] Although the sentencing guidelines do not apply to all criminal convictions, the state conceded at trial that the guidelines apply to the convictions in this case.

convictions in a single sentencing proceeding, the sentence imposed on the first conviction counts as part of the defendant's criminal history in determining the sentence for the second conviction unless the convictions arose out of a single criminal episode. OAR 213-004-0006(2); *State v. Bucholz*, 317 Or 309, 314-15, 855 P2d 1100 (1993) (interpreting an earlier version of that rule).

Once a trial court has determined the sentence for each individual conviction, the remaining question is whether the sentences for those convictions should be imposed consecutively or concurrently. Under ORS 137.123, multiple convictions will be sentenced concurrently unless the trial court finds (1) that the offenses that gave rise to those convictions did not occur as part of the same course of conduct or (2) even if the offenses occurred as part of the same course of conduct, one offense was not incidental to the other or the two offenses resulted in separate harms. If the court makes one of those findings, it may impose consecutive sentences.

That is not the end of the analysis, however. If a trial court decides to sentence convictions consecutively, the sentencing guidelines limit the length of the aggregate consecutive sentence that the trial court may impose if the convictions that resulted in the aggregate consecutive sentence arose out of a single criminal episode. OAR 213-012-0020(2)(a); *State v. Miller*, 317 Or 297, 306, 855 P2d 1093 (1993) (interpreting an earlier version of that rule). As discussed in greater detail below, if the convictions that the court sentenced consecutively arose out of a single criminal episode, the sentencing guidelines limit the length of the aggregate consecutive sentence by assigning the lowest possible criminal history score (and thus the lowest sentencing range) to each sentence that is imposed consecutively. OAR 213-012-0020(2)(a).

In this case, the trial court merged two of defendant's 10 convictions into two other convictions.[3] The court then imposed a presumptive sentence on each of defendant's

---

[3] Based on the state's concession, the trial court merged count 8 (first-degree sexual abuse) into count 4 (second-degree sodomy) and count 6 (first-degree sexual abuse) into count 2 (first-degree sodomy).

remaining eight convictions based on the seriousness of each offense and defendant's criminal history.[4] After the trial court determined the sentence on defendant's first conviction, it counted that conviction as part of his criminal history in determining the presumptive sentence for defendant's second conviction. Including the first conviction as part of defendant's criminal history increased his criminal history score and, for that reason, resulted in a higher presumptive sentence for the second conviction. The court followed the same course in determining the presumptive sentences for the remainder of defendant's convictions.[5]

The court found that each of defendant's eight convictions arose out of a separate criminal episode. Given that finding, the court exercised its discretion to sentence each of those convictions consecutively. ORS 137.123. Finally, the trial court found that the limits that the sentencing guidelines place on the length of the aggregate consecutive sentence did not apply because the convictions did not arise out of a single criminal episode.

Throughout this litigation, defendant has argued that the trial court did not apply the two sentencing guidelines rules consistently with the federal constitution. The Court of Appeals agreed with defendant. Specifically, it agreed that each rule increased defendant's sentence on the basis of a factual issue—whether defendant's convictions arose out of the same or separate criminal episodes. *See Cuevas*, 263 Or App at 113-15. It also agreed that defendant had a right under the Sixth and Fourteenth Amendments to have the jury decide that fact before the trial court applied

---

[4] The guidelines permit a trial court to impose an upward or a downward departure from the presumptive sentencing range if the trial court finds "substantial and compelling reasons" for doing so. *See State v. Dilts*, 336 Or 158, 161-62, 82 P3d 593 (2003) (describing sentencing guideline rules), *vac'd and rem'd on other grounds, Dilts v. Oregon*, 542 US 934, 124 S Ct 2906, 159 L Ed 2d 809 (2004). In this case, the trial court did not impose a departure sentence on any of defendant's convictions.

[5] By the time that the trial court imposed sentences on four of defendant's convictions, defendant's criminal history score had topped out, and each additional conviction did not increase defendant's score. However, the sentences for defendant's fifth, sixth, seventh, and eighth convictions were all higher than they would have been if his first, second, and third convictions had not been included in his criminal history score.

those two sentencing rules to calculate defendant's sentence. *Id*. The Court of Appeals held, however, that the trial court's failure to submit that factual issue to the jury was harmless because the only conclusion that a reasonable juror could have reached on this record was that defendant's eight convictions arose out of separate criminal episodes. *Id*.

The state petitioned for review, even though the Court of Appeals had affirmed the trial court's judgment on harmless error grounds. The state argued that the Court of Appeals had misconstrued both the sentencing guidelines rules and *Apprendi*. The state contended that the Court of Appeals' ruling, if left uncorrected, would result in unnecessary jury determinations in similar cases in the future. We allowed the state's petition for review to consider whether the Court of Appeals erred in applying *Apprendi* to the two sentencing guidelines rules. *See State v. Snyder*, 337 Or 410, 97 P3d 1181 (2004) (allowing review in a similar procedural posture).

On review, defendant argues initially that we should overrule this court's decisions in *Miller* and *Bucholz*. He contends that this court erred in limiting the sentencing guidelines rules at issue in those cases (and this one) to instances in which a defendant's convictions arose out of the same criminal episode. In defendant's view, each of those rules applies without regard to whether the convictions arose out of the same or separate criminal episodes. Defendant argues alternatively that, even if we do not overrule *Miller* and *Bucholz*, the question whether his convictions arose out of separate criminal episodes was a necessary factual predicate to increasing his sentence under both sentencing guideline rules. It follows, he contends, that he has a federal constitutional right under *Apprendi* to require that a jury find that fact beyond a reasonable doubt.

We begin with defendant's argument that *Miller* and *Bucholz* should be overruled. If we were to agree with defendant on that issue, we would not need to reach the federal constitutional issues that he pressed below and that the Court of Appeals decided. As we read this court's decisions in *Miller* and *Bucholz*, they start from a proposition that the court identified in *Miller*. The court explained that, when

the Criminal Justice Sentencing Commission drafted the sentencing guidelines rules, "only single-episode criminal acts could have been joined in one indictment or criminal case" and sentenced in a single judicial proceeding. *Miller*, 317 Or at 303. The court noted that the sentencing guidelines rules were consistent with that assumption. *Id.* at 304-05. That is, they limited the length of consecutive sentences imposed in a single judicial proceeding on the assumption that the offenses being sentenced in that proceeding arose out of a single criminal episode. *Id.* However, the sentencing guidelines did not place that limit on sentences imposed in separate proceedings, which would have arisen out of separate criminal episodes. *Id.*

In 1989, the legislature changed the statutes to permit offenses that arose out of separate criminal episodes to be joined in the same indictment. *See id.* at 303; Or Laws 1989, ch 842, § 1. As a result of that statutory change, offenses sentenced in a single criminal proceeding could arise out of separate criminal episodes. The court gave effect to that statutory change by interpreting the sentencing guidelines rule that limits the aggregate length of consecutive sentences to apply only to offenses arising out of a single criminal episode. *Miller*, 317 Or at 306. The court reasoned that, if it interpreted the rule otherwise, the length of a defendant's consecutive sentence could be manipulated by charging two offenses arising out of a single criminal episode in separate proceedings. *Id.*[6]

That same context informed the court's decision in *Bucholz*. The court noted in *Bucholz* that the sentencing guidelines rule governing a defendant's criminal history originally provided that the only convictions that would count as part of an offender's criminal history were those convictions that existed at the time the current crime was

---

[6] The court noted that "the [1989] legislature considered and adopted the liberal joinder bill *** and the sentencing guidelines bill *** in the same legislative session and through hearings in the same committee." *Miller*, 317 Or at 305. The court also noted two conflicting views on whether the joinder bill would affect the sentencing guidelines bill and appears to have given greater weight to the view that "if a change in current charging law is adopted, that change could have an effect on calculation of the criminal history score." *Id.* at 305 n 2 (summarizing Kathleen Bogan's testimony before the committee).

committed. 317 Or at 312. The legislature changed that rule to provide that an offender's criminal history would be based on the offender's convictions "at the time the current crime or crimes of conviction is sentenced." *Id.* (quoting text of rule). As discussed in greater detail below, after considering the legislative history of that change, the court explained in *Bucholz* that, when a trial court sentences multiple convictions in a single hearing, each conviction that is sentenced counts towards a defendant's criminal history unless the convictions arose out of the same criminal episode.

In interpreting the sentencing guidelines rules in *Miller* and *Bucholz*, this court considered many of the same arguments that defendant raises here. Since this court decided *Miller* and *Bucholz* more than 20 years ago, they have become an integral part of the fabric of Oregon sentencing laws. During that time, neither the legislature nor the Oregon Criminal Justice Commission has amended the sentencing guidelines rules to restore what defendant contends was the true meaning of those rules. Rather, the sentencing guidelines rules that this court interpreted in *Miller* and *Bucholz* have been applied repeatedly in calculating innumerable sentences.

Those considerations counsel against disturbing the decisions in *Miller* and *Bucholz*, even if we might have interpreted the rules at issue in those cases differently. *See [Farmers Ins. Co. v. Mowry](link)*, 350 Or 686, 700, 261 P3d 1 (2011) (reaching a similar conclusion where the issues had been fully litigated and transactions had been structured based on this court's prior interpretation). We accordingly decline defendant's invitation to overrule *Miller* and *Bucholz* and conclude that any changes to those sentencing guidelines rules should be left to the legislature and the Criminal Justice Commission. We accordingly turn to defendant's argument that the two sentencing guidelines rules, as interpreted in *Miller* and *Bucholz*, depend on facts that, under *Apprendi*, must be found by a jury beyond a reasonable doubt. We begin by restating the applicable federal constitutional principles and then discuss the two sentencing guideline rules.

## I.  APPLICABLE FEDERAL PRINCIPLES

In 2000, the United States Supreme Court held:

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

*Apprendi*, 530 US at 490. Four years later, the Court explained in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id*. at 303 (emphasis omitted). Finally, the Court explained in *Oregon v. Ice*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009), that the rule in *Apprendi* provides a means for determining the elements of an individual offense that a jury must decide beyond a reasonable doubt. It does not extend to a trial court's decision to impose individual sentences consecutively, even though that decision increases a defendant's aggregate sentence based on facts that a jury has not found.

## II.  CONSECUTIVE SENTENCING

OAR 213-012-0020(2)(a) limits the length of an aggregate consecutive sentence if the convictions that comprise the sentence arose out of the same criminal episode. OAR 213-012-0020(2); *Miller*, 317 Or at 306.[7] The rule

---

[7] OAR 213-012-0020 provides, in part:

"(1) When the sentencing judge imposes multiple sentences consecutively, the consecutive sentences shall consist of an incarceration term and a supervision term.

"(2)(a) Subject to the provisions of subsection (b) of this section, the presumptive incarceration term of the consecutive sentences is the sum of:

"(A) The presumptive incarceration term or the prison term defined in OAR 213-008-0005(1) imposed pursuant to a dispositional departure for the primary offense, as defined in [OAR] 213-003-0001(17); and

"(B) Up to the maximum incarceration term indicated in the Criminal History I Column for each additional offense imposed consecutively."

The indictment alleged that defendant committed the charged offenses between January 1, 1995 and 2002. During that period, the applicable sentencing rule was renumbered and amended in respects that are not relevant to the issues that defendant raises on review. This opinion cites the current version of the administrative rule.

divides the offenses that comprise a consecutive sentence into two parts: the primary offense and additional offenses. OAR 213-012-0020(2)(a). It provides that the aggregate consecutive sentence cannot exceed the sum of the presumptive sentence for the primary offense (which is based on the seriousness of the crime and the offender's actual criminal history) and the presumptive sentences for each additional offense (which is based on the seriousness of each additional offense and an assumed criminal history). *Id*. In determining the presumptive sentence for each additional offense, the rule assumes that the offender has no criminal history and assigns the lowest criminal history score possible to that offense. *Id*. Doing so limits a defendant's aggregate consecutive sentence by imposing the lowest presumptive sentencing range possible for each additional offense that is sentenced consecutively.[8]

As we understand defendant's federal constitutional argument, it runs as follows. The question whether OAR 213-012-0020(2)(a) limits a defendant's aggregate consecutive sentence turns on whether the convictions that make up the sentence arose out of the same or separate criminal episodes. In defendant's view, the rule presumes that a trial court will impose a limited sentence (one in which all additional consecutive sentences are based on the lowest criminal history score possible), and it permits a trial court to impose a greater consecutive sentence only if a defendant's convictions arose out of separate criminal episodes. Defendant reasons that the question whether his convictions arose out of the same or separate criminal episodes is a factual issue that the jury did not decide in finding him guilty of the charged offenses. It follows, he contends, that he has a federal constitutional right under *Apprendi* to have the jury find that factual predicate before the trial court can impose an increased consecutive sentence.

---

[8] The sentencing guidelines limit the length of a consecutive sentence another way. *See* OAR 213-012-0020(2)(b). In addition to the limitation discussed above, subsection (b) provides alternatively that a consecutive sentence cannot be greater than twice the length of the presumptive sentence, except as provided in OAR 213-008-0007. *Id*. That alternative limit also applies only if the convictions that gave rise to the consecutive sentence arose from the same criminal episode. *Miller*, 317 Or at 305. Because defendant does not argue that the alternative limit in OAR 213-012-0020(2)(b) results in a shorter consecutive sentence than the limit in OAR 213-012-0020(2)(a), we do not discuss subsection (b) further.

We agree with defendant that the question whether his convictions arose out of the same or separate criminal episodes is a factual issue. We also agree that the jury did not decide that factual issue in finding that he was guilty of the charged offenses. Put differently, on the record in this case, we cannot say that that factual issue comes within the "prior conviction" exception that *Apprendi* recognized. *See* 530 US at 490 (explaining that "[o]ther than the fact of a prior conviction" a jury must find facts that increase a defendant's sentence above the statutory maximum).[9]

We conclude, however, that defendant's federal constitutional argument fails for two reasons. First, as a matter of state law, the factual finding on which defendant's argument turns did not increase his sentence. Rather, it provided a basis for reducing his sentence, and *Apprendi* does not require that the jury find facts that reduce the length of a defendant's sentence. Second, even if defendant were correct that the rule directs a trial court to begin with a limited aggregate consecutive sentence and increase that sentence only if the convictions arose out of separate criminal episodes, the Court's decision in *Ice* makes clear that the rule, as defendant interprets it, does not violate the principle announced in *Apprendi*.

In considering the first reason, we begin with the premise of defendant's argument—that, as a matter of state law, OAR 213-012-0020(2)(a) directs courts to begin with a limited consecutive sentence and increase that sentence only if the convictions that comprise the sentence arose out of separate criminal episodes. The terms of the rule do not address that issue. However, the sequence in which OAR 213-012-0020(2) comes into play in sentencing demonstrates that it serves to limit a consecutive sentence rather than to increase it.

---

[9] Read in light of the instructions, the jury's verdict identified the victim of each offense and the place where each offense occurred. It is not possible, however, to tell from the verdict, read in light of the instructions, whether all defendant's convictions arose out of separate criminal episodes. Accordingly, the state cannot rely on the prior conviction exception to *Apprendi* to establish that fact. *See Shepherd v. United States*, 544 US 13, 25, 125 S Ct 1254, 161 L Ed 2d 205 (2005) (plurality) (discussing the limits of the prior conviction exception to *Apprendi*).

OAR 213-012-0020(2) applies only if a trial court first decides to impose individual sentences consecutively. Those individual sentences, run consecutively, add up to an aggregate consecutive sentence, and the only function that OAR 213-012-0020(2) serves is to limit the length of the aggregate sentence that the trial court otherwise would impose. Put differently, if the aggregate consecutive sentence that the trial court otherwise would impose is shorter than the limited consecutive sentence produced by the rule, the rule is inapplicable. Given its relationship to the other sentencing decisions that a trial court must make in imposing sentences consecutively, we conclude, as a matter of state law, that OAR 213-012-0020(2) serves only to limit the length of the aggregate consecutive sentence that the trial court otherwise would impose.

*Apprendi* applies only to factual findings that increase the length of a sentence beyond the prescribed statutory maximum. That decision does not apply to factual findings that limit or reduce the length of a sentence. That much follows from the Court's formulation of the rule in *Apprendi*, which has not varied since the Court first stated it 15 years ago. The Court held in *Apprendi*:

> "Other than the fact of a prior conviction, any fact that *increases* the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

530 US at 490 (emphasis added); *accord Alleyne v. United States*, ___ US ___, 133 S Ct 2151, 186 L Ed 2d 314 (2013) (holding that factual findings that increase mandatory minimum sentences are subject to *Apprendi*).

*Ice* confirmed that *Apprendi* applies only to factual findings that increase a defendant's sentence. Before holding that *Apprendi* does not apply to consecutive sentencing decisions, the Court noted that, "[i]n some States, sentences for multiple offenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefore." 555 US at 163-64. The Court then observed that it was "undisputed" that states may take that approach "without transgressing the Sixth Amendment." *Id.* at 164. That is, the Court recognized that a factual finding

that reduces the length of a consecutive sentence does not implicate *Apprendi*. In this case, OAR 213-012-0020(2)(a) limits the length of the aggregate consecutive sentence that the trial court otherwise would impose. It follows that the factual finding that triggers the application of that rule (and that results in reducing the length of the aggregate consecutive sentence) is not subject to *Apprendi*.

Defendant's argument that *Apprendi* applies to OAR 213-012-0020(2)(a) is incorrect for a second, independent reason. By its terms, the holding in *Apprendi* did not extend to the question of how a trial court should aggregate multiple sentences. Rather, the holding in *Apprendi* addressed the procedures that a trial court must follow when "the penalty for a crime [exceeds] the prescribed statutory maximum" for that crime. 530 US at 490. That is, *Apprendi* answered the question what are the elements of a single offense that the state must prove to a jury beyond a reasonable doubt. It did not answer the separate question of how a trial court should aggregate multiple sentences when a jury has found a defendant guilty of multiple offenses.

As the Court has explained, the rule in *Apprendi* arose in response to "a new trend in the legislative regulation of sentencing" that the Court first recognized in *McMillan v. Pennsylvania*, 477 US 79, 106 S Ct 2411, 91 L Ed 2d 67 (1986), when it "considered the significance of facts selected by legislatures that *** increased the range of sentences possible for the underlying crime." *Booker v. United States*, 543 US 220, 236, 125 S Ct 738, 160 L Ed 2d 621 (2005). That is, the Court adopted the rule in *Apprendi* to address determinate sentencing schemes that defined the maximum sentence for an offense but permitted a trial court to enhance the sentence for that offense if the trial court found certain "sentencing factors" by a preponderance of the evidence.

The rule in *Apprendi* provides a means for determining whether those "sentencing factors" are elements of a single offense that the state has to prove to a jury beyond a reasonable doubt. The rule does not have a broader reach. Indeed, the Court was careful to explain in *Booker* that the rule it announced in *Apprendi* was not intended to displace traditional sentencing practices. As the Court explained,

"it is the new circumstances [first recognized in *McMillan*], not a tradition or practice that the new circumstances have superseded, that have led [the Court] to the answer first considered in *Jones* [*v. United States*, 526 US 227, 119 S Ct 1215, 143 L Ed 2d 311 (1999),] and developed in *Apprendi* and subsequent cases culminating with this one." *Booker*, 543 US at 237.

Following *Apprendi* and *Booker*, the Court confirmed *Apprendi*'s limited reach in *Ice*. As the Court explained in *Ice*, "[a]ll of [its prior] decisions involved sentencing for a discrete crime, not—as here—for multiple offenses different in character or committed at different times." 555 US at 167. Accordingly, the question posed by *Ice* was not whether *Apprendi*, by its own terms, applied to the decision to impose consecutive sentences. As *Apprendi* made clear and as *Ice* confirmed, it did not. Rather, the question was whether *Apprendi* should be extended to the decision whether to impose consecutive sentences. *Id.* at 168. Considering both "historical practice and respect for state sovereignty," the Court declined to extend *Apprendi* beyond "the imposition of sentences for discrete crimes" to factual findings that served as the predicate for imposing sentences consecutively. *Id.* That is, *Ice* declined to extend *Apprendi* to factual findings that were the predicate for imposing an increased aggregate sentence. *Id.*

After reviewing the historical record, the Court explained in *Ice* that "legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi*." *Id.* at 169. It follows that, even if the question whether defendant's offenses arose out of separate criminal episodes were the factual predicate for imposing a greater aggregate consecutive sentence, as it was in *Ice*, that factual determination is not subject to *Apprendi*.[10] Defendant errs in arguing otherwise.

---

[10] It is true that the rule also assigns a sentence to each offense that is sentenced consecutively. However, the rule assigns the presumptive sentence that applies to the primary offense and the lowest possible presumptive sentence (based on the lowest possible criminal history score) for each additional offense. Assigning those presumptive sentences follows directly from the jury's verdict and does not offend *Apprendi*.

### III.   CRIMINAL HISTORY

The rule for determining a defendant's criminal history score presents a different issue. Relying on *Bucholz*, the state argues that OAR 213-004-0006(2) applies as follows: When a trial court sentences multiple convictions in a single proceeding, OAR 213-004-0006(2) directs the court to count each prior conviction in determining a defendant's criminal history unless that conviction and the conviction being sentenced arose out of the same criminal episode. It follows, the state contends, that a finding that the two convictions arose out of the same criminal episode reduces the number of convictions in a defendant's criminal history and thus reduces the defendant's presumptive sentence. For that reason, the state argues, the rule does not implicate *Apprendi*.

Defendant and Oregon Public Defense Services (OPDS), appearing as *amicus*, interpret the rule differently.[11] They note that the state has the burden of proving a defendant's prior criminal history. It follows, they contend, that the state must prove that a defendant's convictions arose out of separate criminal episodes before it may use one conviction to increase a defendant's criminal history score. In analyzing the parties' arguments, we begin with the text of the rule. We then discuss the Court of Appeals' and this court's interpretation of that rule in *Bucholz*. We explain why we conclude, as a matter of state law, that the state has the better interpretation of the rule. Finally, we address defendant and the *amicus*'s burden-of-proof argument.

OAR 213-004-0006 provides, in part:

"(1)   The Criminal History Scale includes nine mutually exclusive categories used to classify an offender's criminal history according to the extent and nature of the offender's criminal history at the time the current crime or crimes of conviction is [*sic*] sentenced. * * *

"(2)   An offender's criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender's criminal history at the time the current crime or crimes of conviction

---

[11] The court invited OPDS to file an *amicus* brief, and we appreciate the thoughtful brief that OPDS filed.

are sentenced. For crimes committed on or after November 1,
1989 a conviction is considered to have occurred upon the
pronouncement of sentence in open court."[12]

According to that rule, the criminal history scale "classif[ies]
an offender's criminal history according to the extent and
nature of the offender's criminal history at the time the cur-
rent crime or crimes of conviction is [*sic*] sentenced." OAR
213-004-0006(1).

That text can be interpreted in one of two ways.
In measuring a defendant's criminal history "at the time
the current crime or crimes of conviction [are] sentenced,"
the rule could include, as part of a defendant's criminal
history, only those convictions that preceded the hearing
at which a defendant's "current crime or crimes" are sen-
tenced. Alternatively, when a trial court imposes multiple
sentences in a single proceeding, the rule could include in a
defendant's criminal history each conviction that had been
sentenced "at the time the current crime * * * is sentenced."
The latter interpretation is consistent with the sentence in
subsection (2) that provides that, for crimes committed on
or after November 1, 1989, "a conviction is considered to
have occurred upon the pronouncement of sentence in open
court"—a proposition that would be largely unnecessary if
the only convictions that counted were offenses that had
been sentenced in a prior judicial proceeding.[13]

Initially, the Court of Appeals and this court divided
over how an earlier version of the rule should be interpreted.
In interpreting that version of that rule, the Court of Appeals
held that only convictions sentenced in a prior sentencing

---

[12] As noted, the indictment alleged that defendant committed the charged
offenses between January 1, 1995, and 2002, and the jury's verdict does not
reflect when it found that the charged offenses occurred. We quote the current
version of OAR 213-004-0006, which became effective March 8, 1996. Defendant
does not argue that any difference between the current and former versions is
material.

[13] The version of the rule at issue in *Bucholz* did not contain a sentence stat-
ing that a conviction "is considered to have occurred on pronouncement of sen-
tence in open court," as it does now. *See* 317 Or at 312. However, that sentence
was part of the commentary to the rule, as supplemented, when the court issued
its decision in *Bucholz*, and it became part of the rule itself in 1993 before defen-
dant committed the acts charged in this case. *See State v. Allen*, 151 Or App 281,
289, 948 P2d 745 (1997) (discussing history of the rule).

proceeding could be included in a defendant's criminal history score. *State v. Seals*, 113 Or App 700, 704, 833 P2d 1344 (1992); *State v. Bucholz*, 113 Or App 705, 707, 834 P2d 456 (1992). That was true, under the Court of Appeals decisions in *Seals* and *Bucholz*, regardless of whether the offenses being sentenced arose out of the same or separate criminal episodes. *See Seals*, 113 Or App at 702 (same criminal episode); *Bucholz*, 113 Or App at 707 (separate criminal episodes).

This court allowed review in *Bucholz* and reversed the Court of Appeals decision. *Bucholz*, 317 Or at 321. This court explained that the text of the rule "permits consideration of any previous conviction occurring before 'the time the current crime *** is sentenced.'" *Id.* at 314 (quoting the text of the rule; ellipsis in original). The court concluded that, read literally, the text of the rule contemplated that a trial court sentencing multiple convictions in a single proceeding would include the first conviction that it sentenced in calculating a defendant's criminal history score to determine the presumptive sentence for the second conviction. *Id.*

Although the defendant in *Bucholz* argued that the legislative history of the rule and its commentary supported the Court of Appeals' interpretation, this court reached a different conclusion. *Id.* at 315-16.[14] It noted that the defendant relied in large part on the legislative history of a bill that had failed to pass. *Id.* at 316. The court explained that, even if it were appropriate to consider that legislative history, the most that could be drawn from it was that "[t]he legislators present distinguished between a single criminal episode, which they thought was not prior criminal history for use in sentencing on some other conviction from the same episode, and crimes from more than one episode." *Id.* at 317. The court read the commentary to the rule the same way. *Id.* at 318. It explained that "the wording of the commentary [discussing limitations on using convictions sentenced in the same sentencing proceeding] makes the most sense if it is taken to be addressing only multiple convictions from a single criminal episode." *Id.*

---

[14] Because the legislature had amended OAR 213-004-0006(2), legislative history existed for the rule in addition to the commentary written by the Criminal Justice Commission.

This court accordingly held that, when a court sentences a defendant for multiple convictions in a single proceeding, each conviction on which the court imposes a sentence counts as part of the defendant's criminal history in determining the presumptive sentence for the next conviction. The court held out the possibility, as it had recognized in *Miller*, that the rule would not apply if the offenses being sentenced arose out of a single criminal episode. *See Bucholz*, 317 Or at 317-18 (discussing legislative history). However, the court did not decide that question because no one disputed that the offenses in *Bucholz* arose out of separate criminal episodes. *See Miller*, 317 Or at 300 (describing *Bucholz* as "a case involving two separate indictments for two separate series of criminal acts").

In *State v. Plourd*, 125 Or App 238, 864 P2d 1367 (1993), the Court of Appeals concluded from the discussion of the legislative history in *Bucholz* that a prior conviction should not be counted as part of a defendant's criminal history when that conviction and the conviction being sentenced arose out of the same criminal episode. This court later confirmed *Plourd*'s holding. *See State v. Martin*, 320 Or 448, 450, 452, 887 P2d 782 (1994) (explaining that, because two offenses sentenced in a single criminal proceeding had not arisen out of a single criminal episode, the trial court properly had counted the first offense as part of the defendant's criminal history in sentencing the second offense).

*Bucholz* did not decide the question that the parties raise here; that is, *Bucholz* did not decide whether the departure from the text of the rule for convictions arising out of the same criminal episode was a prerequisite to counting a prior conviction as part of a defendant's criminal history or an exception from doing so. Faced with that question, we conclude that the latter interpretation of the rule is the better one. As noted, the rule provides: "An offender's criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender's criminal history at the time the current crime or crimes of conviction are sentenced." OAR 213-004-0006(2). By its terms, the rule directs courts to base an offender's criminal history on the number of convictions at the time of sentencing, and it provides that, for crimes committed

after November 1, 1989, "a conviction is considered to have occurred upon pronouncement of sentence in open court."

Nothing in the text of that rule recognizes an exception for convictions arising out of the same criminal episode. That departure from the text of the rule derives from the rule's context and legislative history, which this court discussed in *Miller* and *Bucholz*. Given the textual directive and the departure from that directive, we conclude that the departure is best understood as an exception to the textual requirement that every previously sentenced conviction count in determining a defendant's criminal history. *See [ZRZ Realty v. Beneficial Fire and Casualty Ins.](), 349 Or 117, 133, 241 P3d 710 (2010) (relying on the unqualified text of a coverage provision as one reason for holding that a judicially imposed limitation should be viewed as an exclusion from coverage).

Defendant and the *amicus* advance primarily one contrary argument. Relying on ORS 137.079(5)(c) and OAR 213-004-0013(2) and (3), they note that the state has the burden of proving a defendant's criminal history. They infer from that fact that the state must prove that a prior conviction arose out a separate criminal episode from the conviction currently being sentenced before the prior conviction can be counted as part of a defendant's criminal history. In our view, defendant and the *amicus* place more weight on that statutory allocation of proof than it reasonably can bear. Before addressing defendant's argument, it is helpful to set out what the statute and its accompanying rule say.

ORS 137.077 provides for a presentencing report to assist trial courts in determining the appropriate sentence. Among other things, a presentence report must contain "[a] listing of all prior adult felony and Class A misdemeanor convictions and all prior juvenile adjudications." OAR 213-013-0010(2).[15] ORS 137.079(5) provides that "the defendant's criminal history as set forth in the presentence report shall satisfy the state's burden of proof as to the defendant's criminal

---

[15] ORS 137.077 does not specify what a presentence report must contain. That information is found in the applicable rules.

history," unless the defendant notifies the district attorney before sentencing "of any error in the criminal history as set forth in the presentence report." ORS 137.079(5)(b), (c). If the defendant notifies the state of a perceived error, then the state has the burden of proving "any disputed part of the defendant's criminal history." ORS 137.079(5)(c).[16]

Simply as a matter of the text of ORS 137.079(5), it is difficult to see how that statute supports defendant's argument. ORS 137.079(5) places the burden on the state to prove the existence *vel non* of the convictions that are set forth in the presentence report. By its terms, the statute does not place a burden on the state to prove the circumstances surrounding those convictions. Yet, that is what defendant's argument presupposes. His argument assumes that the state bears the burden of proving whether the prior conviction arose out of separate criminal episodes when the fact that the statute says the state must prove is more limited.

However, even if ORS 137.079(5) placed the burden on the state to prove the circumstances surrounding a prior conviction, the statute still provides greater support for the state's interpretation of OAR 213-004-0006(2) than defendant's. ORS 137.079(5) provides that a defendant's criminal history set out in the presentencing report satisfies the state's burden of proof unless the defendant notifies the state otherwise. Put in the context of this rule, that statute provides that, unless a defendant notifies the state that he or she believes that the conviction being sentenced arose out of the same criminal episode as a previously sentenced conviction, then the trial court may count the previously sentenced conviction as part of the defendant's criminal history. If a defendant so notifies the state, then the state has the burden of proving that the conviction is not excluded from being counted by virtue of arising out of the same criminal episode. ORS 137.079(5), if applicable, is consistent with the interpretation of OAR 213-004-0006(2) that the state advances.

---

[16] The rule is the same as the statute, with one exception. Instead of referring to a presentence report, the rule refers to a "summary of the offender's criminal history prepared for the court by the state." OAR 213-004-0013(2), (3).

Ultimately, the difficulty with defendant's argument is that it conflates two separate issues. The question of which party bears the burden of proof is separate from the question of what that party must prove, as this court recognized in *ZRZ Realty*. *See* 349 Or at 136-38. One of the issues in *ZRZ* was who bears the burden of proof when the parties in a declaratory judgment action are transposed. For example, when the party that ordinarily would be the defendant in a breach of contract claim brings a declaratory judgment action to determine its rights under the contract, the courts have divided over which party in the declaratory judgment action bears the burden of proof. *See* 349 Or at 136-37. Some courts hold that the plaintiff in the declaratory judgment action has the burden to prove its affirmative allegations, even though the plaintiff in the declaratory judgment action ordinarily would be the defendant in a breach of contract claim and would have no burden of proof. *See id.* (discussing cases); *First National Bank v. Malady*, 242 Or 353, 358, 408 P2d 724 (1966) (holding that that rule ordinarily applies in Oregon).[17] Other courts hold that the party that ordinarily would have the burden of proof retains that burden, even though that party is now the defendant in the declaratory judgment action. *See ZRZ Realty*, 349 Or at 136-37 (discussing cases).

As those different approaches illustrate, the question of how the burden of proof is allocated is separate from the question of what the party with the burden of proof must establish. That is, the burden of proof is a substantively neutral rule that sheds little light on the terms of the legal rule that the party with the burden of proof must prove or disprove. In this case, the sentencing guidelines rule provides that each prior conviction will be counted as part of a defendant's criminal history subject to an exception for convictions that arose out of the same criminal episode. That exception remains an exception regardless of which party has the burden of proving or disproving it. The statutory allocation of the burden of proof in ORS 137.079(5) does not

---

[17] Oregon followed this rule in *Malady*, 242 Or at 358, although the court noted in *ZRZ* that courts since *Malady* have considered additional factors in deciding how to allocate the burden of proof. *ZRZ Realty*, 349 Or at 137 n 18.

persuade us to read the criminal history sentencing rule differently than we have.

Given our interpretation of OAR 213-004-0006(2), we conclude that that rule does not implicate *Apprendi*. As a matter of state law, a finding that a previously sentenced conviction and the conviction currently being sentenced arose out of a single criminal episode does not increase a defendant's criminal history. Rather, it is a factual finding that reduces a defendant's criminal history and the resulting sentence by not counting a conviction that otherwise would be included in the defendant's criminal history. As explained above, *Apprendi* does not apply to factual findings that reduce a defendant's sentence.

We accordingly hold that trial courts may apply OAR 213-012-0020(2) and OAR 213-004-0006(2) without a jury determination that multiple offenses sentenced in a single judicial proceeding arose out of separate criminal episodes, even when that fact is not apparent from the jury's verdict. We affirm the Court of Appeals decision and the trial court's judgment on that ground.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**WALTERS, J.,** dissenting.

I respectfully dissent. As the majority acknowledges, this case requires this court to interpret the rule for determining a defendant's criminal history score, OAR 213-004-0006(2). I would interpret that rule to permit a sentencing court to include, as part of a defendant's criminal history, only those convictions that preceded the hearing at which a defendant's "current crime or crimes" are sentenced. I would reverse defendant's sentence and remand to the trial court for resentencing.

The majority interprets OAR 213-004-0006(2) as providing a "textual directive" that a sentencing court must base an offender's criminal history score on the number of convictions that exist at the time each crime is sentenced. 358 Or at 165. The majority then recognizes a "departure" from that rule when the offenses being sentenced arise out of a single criminal episode. *Id*. The majority finds the basis

for that departure not in the rule itself or in a case decided by this court, but in the fact that the Court of Appeals recognized such a "departure" in *State v. Plourd*, 125 Or App 238, 864 P2d 1367 (1993). The majority then decides, as a matter of first impression, that that departure constitutes an exception to the textual requirement rather than a prerequisite to its application. 358 Or at 164. It follows, the majority concludes, that the rule does not implicate *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000).

I would start, as the majority does, with the text of the rule, which provides:

> "An offender's criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender's criminal history at the time the current crime or crimes of conviction are sentenced."

OAR 213-004-0006(2). In cases where a defendant is sentenced for multiple crimes of conviction, that rule raises an interpretative question—namely, whether the phrase "at the time the current * * * crimes of conviction are sentenced" refers to the current sentencing proceeding itself or, instead, refers to individual sentences handed down for individual offenses during the same sentencing proceeding.

That question is answered by the rule's reference to the plural "*crimes* of conviction," *id.* (emphasis added), which the majority fails to address. The rule directs courts to base an offender's criminal history on the number of convictions at the time that "the current crime or crimes of conviction are sentenced." OAR 213-004-0006(2). When a court is sentencing an offender for multiple crimes (plural), the rule directs the court to count only criminal history that existed prior to the time that the crimes (plural) are sentenced. In other words, the "current * * * crimes of conviction" are not "sentenced," *id.*, until *each* current crime of conviction has been sentenced.

That understanding accords with the rule's commentary and legislative history as recounted in *State v. Seals*, 113 Or App 700, 833 P2d 1344 (1992). In *Seals*, the court laid out the commentary for *former* OAR 253-04-006(2) (1993), *renumbered as* OAR 213-004-0006(2) (1996),

and then explained that it accurately reflected the legislature's intent. *Id*. at 702-04. The commentary, as quoted by the court, provides:

> "'This section also makes clear that a criminal history, for purposes of sentencing under these rules, is determined as of the time of sentencing. This provision ensures that the severity of the sentence is commensurate with offender's characteristics at the time he or she is sentenced.

> "'The Guidelines Board had originally adopted a rule which would only count prior convictions entered at the time the current crime of conviction was committed. This rule was intended to ensure that court proceedings not be manipulated by either the offender or the state to alter the offender's criminal history classification. The legislature, however, directed the Guidelines Board to amend this rule to provide that the offender's criminal history is to include all prior convictions or juvenile adjudications entered against the offender "at the time the current crime or crimes of conviction is sentenced." Section 98, Chapter 790, Oregon Laws 1989.'

> "'*This reference to "current crime or crimes of conviction" was intended to prohibit the consideration of convictions arising from the current proceeding in classification of the offender's criminal history. This prohibition applies even if the state can establish the chronological order in which the offenses were committed.*'

> "'In short, the legislative intent was to capture as accurately as possible the offender's criminal record at the time of sentencing without encouraging the manipulation of court proceedings as a means to affect the offender's criminal history classification.' *Oregon Sentencing Guidelines Implementation Manual* 50 (1989)."

*Id*. at 702-03 (emphasis in *Seals*). The legislature's intent, as described by the court, is consistent:

> "Although the commentary is not authoritative, here it accurately reflects the legislative intent. The language of OAR 253-04-006(2) was adopted from an amendment offered by Representative Clark. The discussion was directed to the impact of the rule on projected prison populations. Criminal Justice Council staff member Ashford explained the effect of the proposed change in OAR 253-04-006(2):

"'By counting criminal history from date of sentencing, offenders who are being sentenced for multiple offenses could have counted in their criminal history the multiple offenses—the current multiple offenses, because they have been theoretically convicted of them and that's what's driving those numbers up. If the intention of the committee is only to count as prior convictions, convictions unrelated to the current, then the impact figures would be very low.'

"The concern was to clarify that the amendment was not intended to result in increased prison population. The legislators agreed with the explanation provided by Circuit Court Judge Ellis, an associate member of the Criminal Justice Council, who testified:

"'The defendant who's before you for sentencing on four different felonies at the same time—three of those are not to me prior convictions. They're present convictions. *So you wouldn't count [them] as part of prior criminal history, no matter what rule you use for figuring prior criminal history.*'"

*Id*. at 703-04 (emphasis in *Seals*) (footnotes omitted).

Based on that understanding of the commentary and legislative history, the Court of Appeals concluded that *former* OAR 253-04-006(2) (1993), *renumbered as* OAR 213-004-0006(2) (1996), comported "with the principle underlying the guidelines to punish offenders within the limits of correctional resources," and held that the only criminal history a sentencing court could count was the criminal history in place before the current crime or crimes of conviction were sentenced. *Id*. at 704.

The Court of Appeals reached the same conclusion in *State v. Bucholz*, 113 Or App 705, 707, 834 P2d 456 (1992), but the Supreme Court reversed, *State v. Bucholz*, 317 Or 309, 321, 855 P2d 1100 (1993). The Supreme Court read the text of the rule to permit a court that is sentencing multiple convictions in the same proceeding to include the first conviction that it sentences in calculating a defendant's criminal history score for the second conviction. *Id*. The Supreme Court discounted the commentary and legislative history described above by characterizing both as "distinguish[ing] between a single criminal episode, which they thought was

not prior criminal history for use in sentencing on some other conviction from the same episode, and crimes from more than one episode." *Id.* at 317.

This court was wrong in *Bucholz*. Its characterization of the commentary and legislative history does not fairly represent those sources, which spoke directly to the issue presented in that case. Further, the court ignored the rule's reference to "crimes" (plural) of conviction. This case requires that we reconsider *Bucholz* and correct that error.

Instead of doing so, however, the majority reinterprets OAR 213-004-0006(2) and relies primarily on a sentence that was added to the rule after the Supreme Court decided *Bucholz*: "For crimes committed on or after November 1, 1989 a conviction is considered to have occurred upon the pronouncement of sentence in open court." OAR 213-004-0006(2). The majority apparently concludes that that sentence makes the Supreme Court's interpretation in *Bucholz* correct. I disagree and, again, I can do no better than quote the Court of Appeals' reasoning—this time on the effect of that amendment:

> "The state argues that the additional language taken from the commentary, stating that a conviction occurs upon the pronouncement of the sentence in open court, renders the *Seals*, *Bucholz*, *Miller* and *Plourd* decisions 'irrelevant.' According to the state, the 'plain language' of the rule requires courts to consider *any* prior conviction to be part of an offender's criminal history.

> "The difficulties with the state's argument are twofold. First, it fails to explain, beyond the mere assertion of the fact, why the 'plain language' requires the result it asserts. Merely because a conviction occurs at the time sentencing is pronounced in open court does not mean that it must become, at that moment, part of the offender's criminal history. The state's construction, in fact, cannot be reconciled with the language in the rule that defines 'criminal history' in terms of the record of convictions 'at the time the current crime *or crimes* of conviction are sentenced.' If, upon sentencing, each crime becomes part of the criminal history, as the state suggests, then the reference in the rule to prior convictions at the time of the crimes of conviction becomes mere surplusage. We are instructed not to give a construction to enactments that renders portions of it meaningless,

if possible. *See* ORS 174.010 (instructing courts 'not to omit what has been inserted' when construing statutes).

"The state's plain language argument is especially difficult to accept in the light of the fact that the amendment regarding the timing of a 'conviction' within the meaning of the rule merely incorporated into the text of the rule what previously had been expressed in the commentary. In other words, the rule now expressly states what it always has been understood to mean. In that regard, it bears emphasis that the commentary from which the 1993 amendment was taken explained both that the 'current crime or crimes of conviction' cannot be considered part of an offender's criminal history *and* that convictions occur upon pronouncement of sentence in open court.

"Second, and perhaps more importantly, the legislature left materially unchanged the language in the rule referring to 'criminal history at the time of the current crime or crimes are sentenced.' That language, as we have noted, was intended to exclude consideration of crimes committed in the same criminal episode for which a defendant currently is being sentenced."

*State v. Allen*, 151 Or App 281, 290-91, 948 P2d 745 (1997) (emphases in original) (footnotes omitted).

I agree. When a trial court is sentencing a defendant for multiple crimes, OAR 213-004-0006(2) does not provide a "textual directive" to trial courts to count crimes that are sentenced in the current sentencing proceeding as part of a defendant's criminal history. It does the opposite: It directs trial courts to count only those convictions that preceded the hearing at which a defendant's "current crime or crimes" are sentenced.

And even if the majority's interpretation of the rule were correct, the majority would not be correct to recognize a "departure" from that rule based on the "departure" recognized by the Court of Appeals in *Plourd*. If trial courts are permitted to depart from the "unqualified" directive that the majority identifies, it is the rule that must permit that departure. *Plourd* drew on the Supreme Court's "discussion in *Bucholz*" for its conclusion that the defendant in that case was "correct that his convictions, which arose within one general criminal transaction, could not be used to enhance

his criminal history score." 125 Or App at 242 (internal quotation marks omitted). In this case, the majority describes the "discussion" in *Bucholz* as doing no more than holding out the "possibility \* \* \* that the rule might not apply if the offenses being sentenced arose out of a single criminal episode." 358 Or at 164.

I do not see how we can determine whether a "departure" that we have not ourselves recognized constitutes a prerequisite to counting a prior conviction as part of a defendant's criminal history or an exception from doing so before we decide whether to recognize that "departure." And to decide whether to recognize such a departure takes us back to the text of the rule and its commentary and legislative history. In conducting that analysis, I would adopt the reasoning of the Court of Appeals in *Seals* and *Allen*.

I do not understand why the majority, feeling compelled to dip, does not plunge. If, as it appears, the majority is not willing to stand on *Bucholz* for its interpretation of OAR 213-004-0006(2), and is willing to reconsider its text, then the majority should give that text its full due and also consider its commentary and legislative history. If it were to do so, I believe that this court would decide, as did the Court of Appeals, that a sentencing court may count as a part of a defendant's criminal history only those convictions that preceded the hearing at which a defendant's "current crime or crimes" are sentenced.

I also disagree with the majority's further reasoning that the "departure" recognized in *Plourd* is best understood as an exception to the textual requirement that it identifies, and that such an exception mitigates the defendant's sentence and does not implicate *Apprendi*.

As to the first point, even if OAR 213-004-0006(2) is intended to permit a court to count convictions sentenced in a current proceeding in calculating a defendant's criminal history, the rule should not be understood as creating (1) a general rule that all prior convictions be counted and (2) an exception to that rule for prior convictions arising out of the same criminal episode. Instead, the rule is best understood as presenting the trial court with one binary question

of fact: whether the prior conviction arose from a separate criminal episode or from the same criminal episode.

As the majority acknowledges, the court reasoned in *Bucholz* that "'[t]he legislators present *distinguished between* a single criminal episode, which they thought was not prior criminal history for use in sentencing on some other conviction from the same criminal episode, and crimes from more than one criminal episode.'" 358 Or at 163 (quoting *Bucholz*, 317 Or at 317) (emphasis added). Thus, even if the rule is intended to permit the calculation that the majority says it does, the rule is intended to calculate the criminal history score by distinguishing between the same criminal episode and separate criminal episodes. A "separate criminal episode" finding makes the criminal history rule applicable, and a "same criminal episode" finding makes the criminal history rule inapplicable. As a result, the rule sets up a decision tree with a "distinction," and not a general rule with a "departure."

The trial court's finding in this case was consistent with that structure. The trial court did not recognize a general rule and then find an exception. Instead, the trial court made a finding that permitted it to count defendant's convictions in calculating his criminal history—that defendant's convictions were for offenses that arose out of *separate* criminal episodes. Had the trial court instead found that defendant's convictions were for offenses that arose out of the *same* criminal episode, the trial court *would not have been permitted* to count defendant's previously sentenced convictions in calculating his criminal history.

Second, I doubt that the applicability of *Apprendi* depends on the fine line between whether the rule creates a decision tree with a distinction or a general rule with a "departure." The difference may be recognized in construing insurance policies, as the majority notes, but I would not give it constitutional significance, particularly when the legislative history does not demonstrate that the legislature was aware of it.

Rather, I would focus, as the Court did in *Apprendi*, on whether the defendant received a sentence beyond the

prescribed statutory maximum for the offense. *Apprendi*, 530 US at 490. Under *Apprendi*, the prescribed statutory maximum is the maximum sentence that the trial court can impose based on only the facts alleged in the indictment and either reflected in the jury verdict or admitted by the defendant. *Id.* (facts that increase the penalty beyond "statutory maximum" must be found by jury and proven beyond a reasonable doubt); *see also Blakely v. Washington*, 542 US 296, 303, 125 S Ct 2531, 159 L Ed 2d 403 (2004) ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis omitted.)); *State v. Dilts*, 337 Or 645, 652, 103 P3d 95 (2004) ("statutory maximum" is the presumptive sentence based on facts alleged in indictment and admitted by defendant in his guilty plea). A defendant's criminal history is generally not alleged in an indictment and therefore is generally not admitted by the defendant in a guilty plea or reflected in a jury verdict. Thus, as the Court recognized in *Apprendi*, a defendant's criminal history is a fact that "increases the penalty for a crime beyond the prescribed statutory maximum." *Apprendi*, 530 US at 490.

Nevertheless, in *Apprendi*, the Court recognized what it characterized as a "narrow *exception*" to its rule that facts that increase a defendant's sentence beyond the "statutory maximum" must be found by a jury. *Id.* (emphasis added). The Court explained that, in keeping with its prior decision in *Almendarez-Torres v. United States*, 523 US 224, 118 S Ct 1219, 140 L Ed 2d 350 (1998), a jury need not determine any "fact of prior conviction" in determining the length of a defendant's sentence. *Apprendi*, 530 US at 488 (internal quotation marks omitted). The Court reasoned that the procedural safeguards attached to a fact of prior conviction, and the fact that the defendant did not challenge the accuracy of that fact, "mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' *increasing punishment beyond the maximum of the statutory range.*" *Id.* (emphasis added). Not only did the Court in *Apprendi* discuss a defendant's prior conviction as a fact that *increases* a defendant's punishment beyond the statutory maximum, but there would be no need for an *exception*

to the *Apprendi* rule if a defendant's criminal history could be considered to be mitigating rather than enhancing.

My *Apprendi* analysis may be mistaken, and there may be reasons that I have not discussed that make *Apprendi* inapplicable here. I need not dwell on those federal issues for purpose of this dissent, however. I write not to speak definitively about federal law, but because, in reaching the federal issues presented in this case, the majority is required to construe state law. In my view, the majority's interpretation of state law is flawed. I respectfully dissent.

Landau, J., and Brewer, J., join in this dissenting opinion.