*149 KISTLER, J.
This case involves two sentencing guidelines rules. One rule directs trial courts to count a defendant’s convictions at the time of sentencing in calculating the defendant’s criminal history. OAR 213-004-0006(2). The other rule limits the length of a consecutive sentence that a trial court can impose. OAR 213-012-0020(2). On appeal, the Court of Appeals concluded that both rules increased defendant’s sentence based on facts that, under Apprendi v. New Jersey, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), a jury must find beyond a reasonable doubt. State v. Cuevas, 263 Or App 94, 114, 326 P3d 1242 (2014). Although the Court of Appeals concluded that the trial court should have submitted those facts to the jury, it held that the failure to do so was harmless error. Id. On review, we hold that the two sentencing guidelines rules do not implicate Apprendi and affirm the Court of Appeals decision on that ground.
A jury convicted defendant of 10 counts of rape, sodomy, and sexual abuse.[1] When a jury finds a defendant guilty of multiple offenses, a trial court must make two related but separate sentencing decisions. One decision involves the length of the sentence for each conviction. The other involves whether the convictions should run concurrently or consecutively. Oregon has adopted statutes and sentencing guidelines rules to assist trial courts in making those decisions.
For most felony convictions, Oregon’s sentencing guidelines prescribe a presumptive sentence based on the seriousness of the offense and the defendant’s criminal history.[2] See State v. Speedis, 350 Or 424, 427, 256 P3d 1061 (2011) (describing the sentencing guidelines). The guidelines also instruct trial courts on how to calculate a defendant’s criminal history. As discussed below, the guidelines provide that, when a court sentences a defendant for multiple *150 convictions in a single sentencing proceeding, the sentence imposed on the first conviction counts as part of the defendant’s criminal history in determining the sentence for the second conviction unless the convictions arose out of a single criminal episode. OAR 213-004-0006(2); State v. Bucholz, 317 Or 309, 314-15, 855 P2d 1100 (1993) (interpreting an earlier version of that rule).
Once a trial court has determined the sentence for each individual conviction, the remaining question is whether the sentences for those convictions should be imposed consecutively or concurrently. Under ORS 137.123, multiple convictions will be sentenced concurrently unless the trial court finds (1) that the offenses that gave rise to those convictions did not occur as part of the same course of conduct or (2) even if the offenses occurred as part of the same course of conduct, one offense was not incidental to the other or the two offenses resulted in separate harms. If the court makes one of those findings, it may impose consecutive sentences.
That is not the end of the analysis, however. If a trial court decides to sentence convictions consecutively, the sentencing guidelines limit the length of the aggregate consecutive sentence that the trial court may impose if the convictions that resulted in the aggregate consecutive sentence arose out of a single criminal episode. OAR 213-012-0020(2)(a); State v. Miller, 317 Or 297, 306, 855 P2d 1093 (1993) (interpreting an earlier version of that rule). As discussed in greater detail below, if the convictions that the court sentenced consecutively arose out of a single criminal episode, the sentencing guidelines limit the length of the aggregate consecutive sentence by assigning the lowest possible criminal history score (and thus the lowest sentencing range) to each sentence that is imposed consecutively. OAR 213-012-0020 (2)(a).
In this case, the trial court merged two of defendant’s 10 convictions into two other convictions.[3] The court then imposed a presumptive sentence on each of defendant’s *151 remaining eight convictions based on the seriousness of each offense and defendant’s criminal history.[4] After the trial court determined the sentence on defendant’s first conviction, it counted that conviction as part of his criminal history in determining the presumptive sentence for defendant’s second conviction. Including the first conviction as part of defendant’s criminal history increased his criminal history score and, for that reason, resulted in a higher presumptive sentence for the second conviction. The court followed the same course in determining the presumptive sentences for the remainder of defendant’s convictions.[5]
The court found that each of defendant’s eight convictions arose out of a separate criminal episode. Given that finding, the court exercised its discretion to sentence each of those convictions consecutively. ORS 137.123. Finally, the trial court found that the limits that the sentencing guidelines place on the length of the aggregate consecutive sentence did not apply because the convictions did not arise out of a single criminal episode.
Throughout this litigation, defendant has argued that the trial court did not apply the two sentencing guidelines rules consistently with the federal constitution. The Court of Appeals agreed with defendant. Specifically, it agreed that each rule increased defendant’s sentence on the basis of a factual issue — whether defendant’s convictions arose out of the same or separate criminal episodes. See Cuevas, 263 Or App at 113-15. It also agreed that defendant had a right under the Sixth and Fourteenth Amendments to have the jury decide that fact before the trial court applied *152 those two sentencing rules to calculate defendant’s sentence. Id. The Court of Appeals held, however, that the trial court’s failure to submit that factual issue to the jury was harmless because the only conclusion that a reasonable juror could have reached on this record was that defendant’s eight convictions arose out of separate criminal episodes. Id.
The state petitioned for review, even though the Court of Appeals had affirmed the trial court’s judgment on harmless error grounds. The state argued that the Court of Appeals had misconstrued both the sentencing guidelines rules and Apprendi. The state contended that the Court of Appeals’ ruling, if left uncorrected, would result in unnecessary jury determinations in similar cases in the future. We allowed the state’s petition for review to consider whether the Court of Appeals erred in applying Apprendi to the two sentencing guidelines rules. See State v. Snyder, 337 Or 410, 97 P3d 1181 (2004) (allowing review in a similar procedural posture).
On review, defendant argues initially that we should overrule this court’s decisions in Miller and Bucholz. He contends that this court erred in limiting the sentencing guidelines rules at issue in those cases (and this one) to instances in which a defendant’s convictions arose out of the same criminal episode. In defendant’s view, each of those rules applies without regard to whether the convictions arose out of the same or separate criminal episodes. Defendant argues alternatively that, even if we do not overrule Miller and Bucholz, the question whether his convictions arose out of separate criminal episodes was a necessary factual predicate to increasing his sentence under both sentencing guideline rules. It follows, he contends, that he has a federal constitutional right under Apprendi to require that a jury find that fact beyond a reasonable doubt.
We begin with defendant’s argument that Miller and Bucholz should be overruled. If we were to agree with defendant on that issue, we would not need to reach the federal constitutional issues that he pressed below and that the Court of Appeals decided. As we read this court’s decisions in Miller and Bucholz, they start from a proposition that the court identified in Miller. The court explained that, when *153 the Criminal Justice Sentencing Commission drafted the sentencing guidelines rules, “only single-episode criminal acts could have been joined in one indictment or criminal case” and sentenced in a single judicial proceeding. Miller, 317 Or at 303. The court noted that the sentencing guidelines rules were consistent with that assumption. Id. at 304-05. That is, they limited the length of consecutive sentences imposed in a single judicial proceeding on the assumption that the offenses being sentenced in that proceeding arose out of a single criminal episode. Id. However, the sentencing guidelines did not place that limit on sentences imposed in separate proceedings, which would have arisen out of separate criminal episodes. Id.
In 1989, the legislature changed the statutes to permit offenses that arose out of separate criminal episodes to be joined in the same indictment. See id. at 303; Or Laws 1989, ch 842, § 1. As a result of that statutory change, offenses sentenced in a single criminal proceeding could arise out of separate criminal episodes. The court gave effect to that statutory change by interpreting the sentencing guidelines rule that limits the aggregate length of consecutive sentences to apply only to offenses arising out of a single criminal episode. Miller, 317 Or at 306. The court reasoned that, if it interpreted the rule otherwise, the length of a defendant’s consecutive sentence could be manipulated by charging two offenses arising out of a single criminal episode in separate proceedings. Id.[6]
That same context informed the court’s decision in Bucholz. The court noted in Bucholz that the sentencing guidelines rule governing a defendant’s criminal history originally provided that the only convictions that would count as part of an offender’s criminal history were those convictions that existed at the time the current crime was *154 committed. 317 Or at 312. The legislature changed that rule to provide that an offender’s criminal history would be based on the offender’s convictions “at the time the current crime or crimes of conviction is sentenced.” Id. (quoting text of rule). As discussed in greater detail below, after considering the legislative history of that change, the court explained in Bucholz that, when a trial court sentences multiple convictions in a single hearing, each conviction that is sentenced counts towards a defendant’s criminal history unless the convictions arose out of the same criminal episode.
In interpreting the sentencing guidelines rules in Miller and Bucholz, this court considered many of the same arguments that defendant raises here. Since this court decided Miller and Bucholz more than 20 years ago, they have become an integral part of the fabric of Oregon sentencing laws. During that time, neither the legislature nor the Oregon Criminal Justice Commission has amended the sentencing guidelines rules to restore what defendant contends was the true meaning of those rules. Rather, the sentencing guidelines rules that this court interpreted in Miller and Bucholz have been applied repeatedly in calculating innumerable sentences.
Those considerations counsel against disturbing the decisions in Miller and Bucholz, even if we might have interpreted the rules at issue in those cases differently. See Farmers Ins. Co. v. Mowry, 350 Or 686, 700, 261 P3d 1 (2011) (reaching a similar conclusion where the issues had been fully litigated and transactions had been structured based on this court’s prior interpretation). We accordingly decline defendant’s invitation to overrule Miller and Bucholz and conclude that any changes to those sentencing guidelines rules should be left to the legislature and the Criminal Justice Commission. We accordingly turn to defendant’s argument that the two sentencing guidelines rules, as interpreted in Miller and Bucholz, depend on facts that, under Apprendi, must be found by a jury beyond a reasonable doubt. We begin by restating the applicable federal constitutional principles and then discuss the two sentencing guideline rules.
*155 I. APPLICABLE FEDERAL PRINCIPLES
In 2000, the United States Supreme Court held:
“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”
Apprendi, 530 US at 490. Four years later, the Court explained in Blakely v. Washington, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), “that the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.” Id. at 303 (emphasis omitted). Finally, the Court explained in Oregon v. Ice, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009), that the rule in Apprendi provides a means for determining the elements of an individual offense that a jury must decide beyond a reasonable doubt. It does not extend to a trial court’s decision to impose individual sentences consecutively, even though that decision increases a defendant’s aggregate sentence based on facts that a jury has not found.
II. CONSECUTIVE SENTENCING
OAR 213-012-0020(2)(a) limits the length of an aggregate consecutive sentence if the convictions that comprise the sentence arose out of the same criminal episode. OAR 213-012-0020(2); Miller, 317 Or at 306.[7] The rule *156 divides the offenses that comprise a consecutive sentence into two parts: the primary offense and additional offenses. OAR 213-012-0020(2)(a). It provides that the aggregate consecutive sentence cannot exceed the sum of the presumptive sentence for the primary offense (which is based on the seriousness of the crime and the offender’s actual criminal history) and the presumptive sentences for each additional offense (which is based on the seriousness of each additional offense and an assumed criminal history). Id. In determining the presumptive sentence for each additional offense, the rule assumes that the offender has no criminal history and assigns the lowest criminal history score possible to that offense. Id. Doing so limits a defendant’s aggregate consecutive sentence by imposing the lowest presumptive sentencing range possible for each additional offense that is sentenced consecutively.[8]
As we understand defendant’s federal constitutional argument, it runs as follows. The question whether OAR 213-012-0020(2)(a) limits a defendant’s aggregate consecutive sentence turns on whether the convictions that make up the sentence arose out of the same or separate criminal episodes. In defendant’s view, the rule presumes that a trial court will impose a limited sentence (one in which all additional consecutive sentences are based on the lowest criminal history score possible), and it permits a trial court to impose a greater consecutive sentence only if a defendant’s convictions arose out of separate criminal episodes. Defendant reasons that the question whether his convictions arose out of the same or separate criminal episodes is a factual issue that the jury did not decide in finding him guilty of the charged offenses. It follows, he contends, that he has a federal constitutional right under Apprendi to have the jury find that factual predicate before the trial court can impose an increased consecutive sentence.
*157 We agree with defendant that the question whether his convictions arose out of the same or separate criminal episodes is a factual issue. We also agree that the jury did not decide that factual issue in finding that he was guilty of the charged offenses. Put differently, on the record in this case, we cannot say that that factual issue comes within the “prior conviction” exception that Apprendi recognized. See 530 US at 490 (explaining that “[o]ther than the fact of a prior conviction” a jury must find facts that increase a defendant’s sentence above the statutory maximum).[9]
We conclude, however, that defendant’s federal constitutional argument fails for two reasons. First, as a matter of state law, the factual finding on which defendant’s argument turns did not increase his sentence. Rather, it provided a basis for reducing his sentence, and Apprendi does not require that the jury find facts that reduce the length of a defendant’s sentence. Second, even if defendant were correct that the rule directs a trial court to begin with a limited aggregate consecutive sentence and increase that sentence only if the convictions arose out of separate criminal episodes, the Court’s decision in Ice makes clear that the rule, as defendant interprets it, does not violate the principle announced in Apprendi.
In considering the first reason, we begin with the premise of defendant’s argument — that, as a matter of state law, OAR 213-012-0020(2)(a) directs courts to begin with a limited consecutive sentence and increase that sentence only if the convictions that comprise the sentence arose out of separate criminal episodes. The terms of the rule do not address that issue. However, the sequence in which OAR 213-012-0020(2) comes into play in sentencing demonstrates that it serves to limit a consecutive sentence rather than to increase it.
*158 OAR 213-012-0020(2) applies only if a trial court first decides to impose individual sentences consecutively. Those individual sentences, run consecutively, add up to an aggregate consecutive sentence, and the only function that OAR 213-012-0020(2) serves is to limit the length of the aggregate sentence that the trial court otherwise would impose. Put differently, if the aggregate consecutive sentence that the trial court otherwise would impose is shorter than the limited consecutive sentence produced by the rule, the rule is inapplicable. Given its relationship to the other sentencing decisions that a trial court must make in imposing sentences consecutively, we conclude, as a matter of state law, that OAR 213-012-0020(2) serves only to limit the length of the aggregate consecutive sentence that the trial court otherwise would impose.
Apprendi applies only to factual findings that increase the length of a sentence beyond the prescribed statutory maximum. That decision does not apply to factual findings that limit or reduce the length of a sentence. That much follows from the Court’s formulation of the rule in Apprendi, which has not varied since the Court first stated it 15 years ago. The Court held in Apprendi:
“Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”
530 US at 490 (emphasis added); accord Alleyne v. United States, _US _, 133 S Ct 2151, 186 L Ed 2d 314 (2013) (holding that factual findings that increase mandatory minimum sentences are subject to Apprendi).
Ice confirmed that Apprendi applies only to factual findings that increase a defendant’s sentence. Before holding that Apprendi does not apply to consecutive sentencing decisions, the Court noted that, “[i]n some States, sentences for multiple offenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefore.” 555 US at 163-64. The Court then observed that it was “undisputed” that states may take that approach “without transgressing the Sixth Amendment.” Id. at 164. That is, the Court recognized that a factual finding *159 that reduces the length of a consecutive sentence does not implicate Apprendi. In this case, OAR 213-012-0020(2)(a) limits the length of the aggregate consecutive sentence that the trial court otherwise would impose. It follows that the factual finding that triggers the application of that rule (and that results in reducing the length of the aggregate consecutive sentence) is not subject to Apprendi.
Defendant’s argument that Apprendi applies to OAR 213-012-0020(2)(a) is incorrect for a second, independent reason. By its terms, the holding in Apprendi did not extend to the question of how a trial court should aggregate multiple sentences. Rather, the holding in Apprendi addressed the procedures that a trial court must follow when “the penalty for a crime [exceeds] the prescribed statutory maximum” for that crime. 530 US at 490. That is, Apprendi answered the question what are the elements of a single offense that the state must prove to a jury beyond a reasonable doubt. It did not answer the separate question of how a trial court should aggregate multiple sentences when a jury has found a defendant guilty of multiple offenses.
As the Court has explained, the rule in Apprendi arose in response to “a new trend in the legislative regulation of sentencing” that the Court first recognized in McMillan v. Pennsylvania, 477 US 79, 106 S Ct 2411, 91 L Ed 2d 67 (1986), when it “considered the significance of facts selected by legislatures that *** increased the range of sentences possible for the underlying crime.” Booker v. United States, 543 US 220, 236, 125 S Ct 738, 160 L Ed 2d 621 (2005). That is, the Court adopted the rule in Apprendi to address determinate sentencing schemes that defined the maximum sentence for an offense but permitted a trial court to enhance the sentence for that offense if the trial court found certain “sentencing factors” by a preponderance of the evidence.
The rule in Apprendi provides a means for determining whether those “sentencing factors” are elements of a single offense that the state has to prove to a jury beyond a reasonable doubt. The rule does not have a broader reach. Indeed, the Court was careful to explain in Booker that the rule it announced in Apprendi was not intended to displace traditional sentencing practices. As the Court explained, *160 “it is the new circumstances [first recognized in McMillan], not a tradition or practice that the new circumstances have superseded, that have led [the Court] to the answer first considered in Jones [v. United States, 526 US 227, 119 S Ct 1215, 143 L Ed 2d 311 (1999),] and developed in Apprendi and subsequent cases culminating with this one.” Booker, 543 US at 237.
Following Apprendi and Booker, the Court confirmed Apprendi's limited reach in Ice. As the Court explained in Ice, “[a] 11 of [its prior] decisions involved sentencing for a discrete crime, not — as here — for multiple offenses different in character or committed at different times.” 555 US at 167. Accordingly, the question posed by Ice was not whether Apprendi, by its own terms, applied to the decision to impose consecutive sentences. As Apprendi made clear and as Ice confirmed, it did not. Rather, the question was whether Apprendi should be extended to the decision whether to impose consecutive sentences. Id. at 168. Considering both “historical practice and respect for state sovereignty,” the Court declined to extend Apprendi beyond “the imposition of sentences for discrete crimes” to factual findings that served as the predicate for imposing sentences consecutively. Id. That is, Ice declined to extend Apprendi to factual findings that were the predicate for imposing an increased aggregate sentence. Id.
After reviewing the historical record, the Court explained in Ice that “legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in Apprendi” Id. at 169. It follows that, even if the question whether defendant’s offenses arose out of separate criminal episodes were the factual predicate for imposing a greater aggregate consecutive sentence, as it was in Ice, that factual determination is not subject to Apprendi.[10] Defendant errs in arguing otherwise.
*161 III. CRIMINAL HISTORY
The rule for determining a defendant’s criminal history score presents a different issue. Relying on Bucholz, the state argues that OAR 213-004-0006(2) applies as follows: When a trial court sentences multiple convictions in a single proceeding, OAR 213-004-0006(2) directs the court to count each prior conviction in determining a defendant’s criminal history unless that conviction and the conviction being sentenced arose out of the same criminal episode. It follows, the state contends, that a finding that the two convictions arose out of the same criminal episode reduces the number of convictions in a defendant’s criminal history and thus reduces the defendant’s presumptive sentence. For that reason, the state argues, the rule does not implicate Apprendi.
Defendant and Oregon Public Defense Services (OPDS), appearing as amicus, interpret the rule differently.[11] They note that the state has the burden of proving a defendant’s prior criminal history. It follows, they contend, that the state must prove that a defendant’s convictions arose out of separate criminal episodes before it may use one conviction to increase a defendant’s criminal history score. In analyzing the parties’ arguments, we begin with the text of the rule. We then discuss the Court of Appeals’ and this court’s interpretation of that rule in Bucholz. We explain why we conclude, as a matter of state law, that the state has the better interpretation of the rule. Finally, we address defendant and the amicus’s burden-of-proof argument.
OAR 213-004-0006 provides, in part:
“(1) The Criminal History Scale includes nine mutually exclusive categories used to classify an offender’s criminal history according to the extent and nature of the offender’s criminal history at the time the current crime or crimes of conviction is [sic] sentenced. * * *
“(2) An offender’s criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender’s criminal history at the time the current crime or crimes of conviction *162 are sentenced. For crimes committed on or after November 1, 1989 a conviction is considered to have occurred upon the pronouncement of sentence in open court.”[12]
According to that rule, the criminal history scale “classif [ies] an offender’s criminal history according to the extent and nature of the offender’s criminal history at the time the current crime or crimes of conviction is [sic] sentenced.” OAR 213-004-0006(1).
That text can be interpreted in one of two ways. In measuring a defendant’s criminal history “at the time the current crime or crimes of conviction [are] sentenced,” the rule could include, as part of a defendant’s criminal history, only those convictions that preceded the hearing at which a defendant’s “current crime or crimes” are sentenced. Alternatively, when a trial court imposes multiple sentences in a single proceeding, the rule could include in a defendant’s criminal history each conviction that had been sentenced “at the time the current crime * * * is sentenced.” The latter interpretation is consistent with the sentence in subsection (2) that provides that, for crimes committed on or after November 1, 1989, “a conviction is considered to have occurred upon the pronouncement of sentence in open court” — a proposition that would be largely unnecessary if the only convictions that counted were offenses that had been sentenced in a prior judicial proceeding.[13]
Initially, the Court of Appeals and this court divided over how an earlier version of the rule should be interpreted. In interpreting that version of that rule, the Court of Appeals held that only convictions sentenced in a prior sentencing *163 proceeding could be included in a defendant’s criminal history score. State v. Seals, 113 Or App 700, 704, 833 P2d 1344 (1992); State v. Bucholz, 113 Or App 705, 707, 834 P2d 456 (1992). That was true, under the Court of Appeals decisions in Seals and Bucholz, regardless of whether the offenses being sentenced arose out of the same or separate criminal episodes. See Seals, 113 Or App at 702 (same criminal episode); Bucholz, 113 Or App at 707 (separate criminal episodes).
This court allowed review in Bucholz and reversed the Court of Appeals decision. Bucholz, 317 Or at 321. This court explained that the text of the rule “permits consideration of any previous conviction occurring before ‘the time the current crime * * * is sentenced.’” Id. at 314 (quoting the text of the rule; ellipsis in original). The court concluded that, read literally, the text of the rule contemplated that a trial court sentencing multiple convictions in a single proceeding would include the first conviction that it sentenced in calculating a defendant’s criminal history score to determine the presumptive sentence for the second conviction. Id.
Although the defendant in Bucholz argued that the legislative history of the rule and its commentary supported the Court of Appeals’ interpretation, this court reached a different conclusion. Id. at 315-16.[14] It noted that the defendant relied in large part on the legislative history of a bill that had failed to pass. Id. at 316. The court explained that, even if it were appropriate to consider that legislative history, the most that could be drawn from it was that “[t]he legislators present distinguished between a single criminal episode, which they thought was not prior criminal history for use in sentencing on some other conviction from the same episode, and crimes from more than one episode.” Id. at 317. The court read the commentary to the rule the same way. Id. at 318. It explained that “the wording of the commentary [discussing limitations on using convictions sentenced in the same sentencing proceeding] makes the most sense if it is taken to be addressing only multiple convictions from a single criminal episode.” Id.
*164 This court accordingly held that, when a court sentences a defendant for multiple convictions in a single proceeding, each conviction on which the court imposes a sentence counts as part of the defendant’s criminal history in determining the presumptive sentence for the next conviction. The court held out the possibility, as it had recognized in Miller, that the rule would not apply if the offenses being sentenced arose out of a single criminal episode. See Bucholz, 317 Or at 317-18 (discussing legislative history). However, the court did not decide that question because no one disputed that the offenses in Bucholz arose out of separate criminal episodes. See Miller, 317 Or at 300 (describing Bucholz as “a case involving two separate indictments for two separate series of criminal acts”).
In State v. Plourd, 125 Or App 238, 864 P2d 1367 (1993), the Court of Appeals concluded from the discussion of the legislative history in Bucholz that a prior conviction should not be counted as part of a defendant’s criminal history when that conviction and the conviction being sentenced arose out of the same criminal episode. This court later confirmed Plourd’s holding. See State v. Martin, 320 Or 448, 450, 452, 887 P2d 782 (1994) (explaining that, because two offenses sentenced in a single criminal proceeding had not arisen out of a single criminal episode, the trial court properly had counted the first offense as part of the defendant’s criminal history in sentencing the second offense).
Bucholz did not decide the question that the parties raise here; that is, Bucholz did not decide whether the departure from the text of the rule for convictions arising out of the same criminal episode was a prerequisite to counting a prior conviction as part of a defendant’s criminal history or an exception from doing so. Faced with that question, we conclude that the latter interpretation of the rule is the better one. As noted, the rule provides: “An offender’s criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender’s criminal history at the time the current crime or crimes of conviction are sentenced.” OAR 213-004-0006(2). By its terms, the rule directs courts to base an offender’s criminal history on the number of convictions at the time of sentencing, and it provides that, for crimes committed *165 after November 1, 1989, “a conviction is considered to have occurred upon pronouncement of sentence in open court.”
Nothing in the text of that rule recognizes an exception for convictions arising out of the same criminal episode. That departure from the text of the rule derives from the rule’s context and legislative history, which this court discussed in Miller and Bucholz. Given the textual directive and the departure from that directive, we conclude that the departure is best understood as an exception to the textual requirement that every previously sentenced conviction count in determining a defendant’s criminal history. See ZRZ Realty v. Beneficial Fire and Casualty Ins., 349 Or 117, 133, 241 P3d 710 (2010) (relying on the unqualified text of a coverage provision as one reason for holding that a judicially imposed limitation should be viewed as an exclusion from coverage).
Defendant and the amicus advance primarily one contrary argument. Relying on ORS 137.079(5)(c) and OAR 213-004-0013(2) and (3), they note that the state has the burden of proving a defendant’s criminal history. They infer from that fact that the state must prove that a prior conviction arose out a separate criminal episode from the conviction currently being sentenced before the prior conviction can be counted as part of a defendant’s criminal history. In our view, defendant and the amicus place more weight on that statutory allocation of proof than it reasonably can bear. Before addressing defendant’s argument, it is helpful to set out what the statute and its accompanying rule say.
ORS 137.077 provides for a presentencing report to assist trial courts in determining the appropriate sentence. Among other things, a presentence report must contain “[a] listing of all prior adult felony and Class A misdemeanor convictions and all prior juvenile adjudications.” OAR 213-013-0010(2).[15] ORS 137.079(5) provides that “the defendant’s criminal history as set forth in the presentence report shall satisfy the state’s burden of proof as to the defendant’s criminal *166 history,” unless the defendant notifies the district attorney before sentencing “of any error in the criminal history as set forth in the presentence report.” ORS 137.079(5)(b), (c). If the defendant notifies the state of a perceived error, then the state has the burden of proving “any disputed part of the defendant’s criminal history.” ORS 137.079(5)(c).[16]
Simply as a matter of the text of ORS 137.079(5), it is difficult to see how that statute supports defendant’s argument. ORS 137.079(5) places the burden on the state to prove the existence vel non of the convictions that are set forth in the presentence report. By its terms, the statute does not place a burden on the state to prove the circumstances surrounding those convictions. Yet, that is what defendant’s argument presupposes. His argument assumes that the state bears the burden of proving whether the prior conviction arose out of separate criminal episodes when the fact that the statute says the state must prove is more limited.
However, even if ORS 137.079(5) placed the burden on the state to prove the circumstances surrounding a prior conviction, the statute still provides greater support for the state’s interpretation of OAR 213-004-0006(2) than defendant’s. ORS 137.079(5) provides that a defendant’s criminal history set out in the presentencing report satisfies the state’s burden of proof unless the defendant notifies the state otherwise. Put in the context of this rule, that statute provides that, unless a defendant notifies the state that he or she believes that the conviction being sentenced arose out of the same criminal episode as a previously sentenced conviction, then the trial court may count the previously sentenced conviction as part of the defendant’s criminal history. If a defendant so notifies the state, then the state has the burden of proving that the conviction is not excluded from being counted by virtue of arising out of the same criminal episode. ORS 137.079(5), if applicable, is consistent with the interpretation of OAR 213-004-0006(2) that the state advances.
*167 Ultimately, the difficulty with defendant’s argument is that it conflates two separate issues. The question of which party bears the burden of proof is separate from the question of what that party must prove, as this court recognized in ZRZ Realty. See 349 Or at 136-38. One of the issues in ZRZ was who bears the burden of proof when the parties in a declaratory judgment action are transposed. For example, when the party that ordinarily would be the defendant in a breach of contract claim brings a declaratory judgment action to determine its rights under the contract, the courts have divided over which party in the declaratory judgment action bears the burden of proof. See 349 Or at 136-37. Some courts hold that the plaintiff in the declaratory judgment action has the burden to prove its affirmative allegations, even though the plaintiff in the declaratory judgment action ordinarily would be the defendant in a breach of contract claim and would have no burden of proof. See id. (discussing cases); First National Bank v. Malady, 242 Or 353, 358, 408 P2d 724 (1966) (holding that that rule ordinarily applies in Oregon).[17] Other courts hold that the party that ordinarily would have the burden of proof retains that burden, even though that party is now the defendant in the declaratory judgment action. See ZRZ Realty, 349 Or at 136-37 (discussing cases).
As those different approaches illustrate, the question of how the burden of proof is allocated is separate from the question of what the party with the burden of proof must establish. That is, the burden of proof is a substantively neutral rule that sheds little light on the terms of the legal rule that the party with the burden of proof must prove or disprove. In this case, the sentencing guidelines rule provides that each prior conviction will be counted as part of a defendant’s criminal history subject to an exception for convictions that arose out of the same criminal episode. That exception remains an exception regardless of which party has the burden of proving or disproving it. The statutory allocation of the burden of proof in ORS 137.079(5) does not *168 persuade us to read the criminal history sentencing rule differently than we have.
Given our interpretation of OAR 213-004-0006(2), we conclude that that rule does not implicate Apprendi. As a matter of state law, a finding that a previously sentenced conviction and the conviction currently being sentenced arose out of a single criminal episode does not increase a defendant’s criminal history. Rather, it is a factual finding that reduces a defendant’s criminal history and the resulting sentence by not counting a conviction that otherwise would be included in the defendant’s criminal history. As explained above, Apprendi does not apply to factual findings that reduce a defendant’s sentence.
We accordingly hold that trial courts may apply OAR 213-012-0020(2) and OAR 213-004-0006(2) without a jury determination that multiple offenses sentenced in a single judicial proceeding arose out of separate criminal episodes, even when that fact is not apparent from the jury’s verdict. We affirm the Court of Appeals decision and the trial court’s judgment on that ground.
The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

 The jury found that the offenses involved two different children and occurred at three separate locations. After the jury returned its verdict, the state conceded that two convictions merged into two other convictions, leaving eight convictions for sentencing.

 Although the sentencing guidelines do not apply to all criminal convictions, the state conceded at trial that the guidelines apply to the convictions in this case.

 Based on the state’s concession, the trial court merged count 8 (first-degree sexual abuse) into count 4 (second-degree sodomy) and count 6 (first-degree sexual abuse) into count 2 (first-degree sodomy).

 The guidelines permit a trial court to impose an upward or a downward departure from the presumptive sentencing range if the trial court finds “substantial and compelling reasons” for doing so. See State v. Dilts, 336 Or 158, 161-62, 82 P3d 593 (2003) (describing sentencing guideline rules), vac’d and rent’d on other grounds, Dilts v. Oregon, 542 US 934, 124 S Ct 2906, 159 L Ed 2d 809 (2004). In this case, the trial court did not impose a departure sentence on any of defendant’s convictions.

 By the time that the trial court imposed sentences on four of defendant’s convictions, defendant’s criminal history score had topped out, and each additional conviction did not increase defendant’s score. However, the sentences for defendant’s fifth, sixth, seventh, and eighth convictions were all higher than they would have been if his first, second, and third convictions had not been included in his criminal history score.

 The court noted that “the [1989] legislature considered and adopted the liberal joinder bill * * * and the sentencing guidelines bill * * * in the same legislative session and through hearings in the same committee.” Miller, 317 Or at 305. The court also noted two conflicting views on whether the joinder bill would affect the sentencing guidelines bill and appears to have given greater weight to the view that “if a change in current charging law is adopted, that change could have an effect on calculation of the criminal history score.” Id. at 305 n 2 (summarizing Kathleen Bogan’s testimony before the committee).

 OAR 213-012-0020 provides, in part:
“(1) When the sentencing judge imposes multiple sentences consecutively, the consecutive sentences shall consist of an incarceration term and a supervision term.
“(2)(a) Subject to the provisions of subsection (b) of this section, the presumptive incarceration term of the consecutive sentences is the sum of:
“(A) The presumptive incarceration term or the prison term defined in OAR 213-008-0005(1) imposed pursuant to a dispositional departure for the primary offense, as defined in [OAR] 213-003-0001(17); and
“(B) Up to the maximum incarceration term indicated in the Criminal History I Column for each additional offense imposed consecutively.”
The indictment alleged that defendant committed the charged offenses between January 1, 1995 and 2002. During that period, the applicable sentencing rule was renumbered and amended in respects that are not relevant to the issues that defendant raises on review. This opinion cites the current version of the administrative rule.

 The sentencing guidelines limit the length of a consecutive sentence another way. See OAR213-012-0020(2)(b). In addition to the limitation discussed above, subsection (b) provides alternatively that a consecutive sentence cannot be greater than twice the length of the presumptive sentence, except as provided in OAR 213-008-0007. Id. That alternative limit also applies only if the convictions that gave rise to the consecutive sentence arose from the same criminal episode. Miller, 317 Or at 305. Because defendant does not argue that the alternative limit in OAR 213-012-0020(2)(b) results in a shorter consecutive sentence than the limit in OAR 213-012-0020(2)(a), we do not discuss subsection (b) further.

 Read in light of the instructions, the jury’s verdict identified the victim of each offense and the place where each offense occurred. It is not possible, however, to tell from the verdict, read in light of the instructions, whether all defendant’s convictions arose out of separate criminal episodes. Accordingly, the state cannot rely on the prior conviction exception to Apprendi to establish that fact. See Shepherd v. United States, 544 US 13, 25, 125 S Ct 1254, 161 L Ed 2d 205 (2005) (plurality) (discussing the limits of the prior conviction exception to Apprendi).

 It is true that the rule also assigns a sentence to each offense that is sentenced consecutively. However, the rule assigns the presumptive sentence that applies to the primary offense and the lowest possible presumptive sentence (based on the lowest possible criminal history score) for each additional offense. Assigning those presumptive sentences follows directly from the jury’s verdict and does not offend Apprendi.

 The court invited OPDS to file an amicus brief, and we appreciate the thoughtful brief that OPDS filed.

 As noted, the indictment alleged that defendant committed the charged offenses between January 1, 1995, and 2002, and the jury’s verdict does not reflect when it found that the charged offenses occurred. We quote the current version of OAR 213-004-0006, which became effective March 8, 1996. Defendant does not argue that any difference between the current and former versions is material.

 The version of the rule at issue in Bucholz did not contain a sentence stating that a conviction “is considered to have occurred on pronouncement of sentence in open court,” as it does now. See 317 Or at 312. However, that sentence was part of the commentary to the rule, as supplemented, when the court issued its decision in Bucholz, and it became part of the rule itself in 1993 before defendant committed the acts charged in this case. See State v. Allen, 151 Or App 281, 289, 948 P2d 745 (1997) (discussing history of the rule).

 Because the legislature had amended OAR 213-004-0006(2), legislative history existed for the rule in addition to the commentary written by the Criminal Justice Commission.

 ORS 137.077 does not specify what a presentence report must contain. That information is found in the applicable rules.

 The rule is the same as the statute, with one exception. Instead of referring to a presentence report, the rule refers to a “summary of the offender’s criminal history prepared for the court by the state.” OAR 213-004-0013(2), (3).

 Oregon followed this rule in Malady, 242 Or at 358, although the court noted in ZRZ that courts since Malady have considered additional factors in deciding how to allocate the burden of proof. ZRZ Realty, 349 Or at 137 n 18.