Argued and submitted January 30, 2020; remanded for resentencing, otherwise affirmed October 27, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACOBI BROSHAWN THORNSBERRY,
*Defendant-Appellant.*

Lane County Circuit Court
17CR75871; A167617

501 P3d 1

For one of defendant's two first-degree rape convictions, the trial court imposed a 300-month prison term under ORS 137.690, which provides for that imprisonment term if a defendant has a prior conviction, which includes a conviction in the same sentencing proceeding if the conviction is for a separate criminal episode. The trial court made the finding that the criminal episodes were separate and imposed the 300-month prison sentence. On appeal, defendant argues that the jury, rather than the trial court, was required to make the finding that the two rape convictions arose out of separate criminal episodes before the trial court could impose the 300-month prison sentence. *Held*: Under *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), defendant had the constitutional right to have a jury make the finding that the second rape conviction arose from a criminal episode that was separate from the criminal episode that gave rise to the first rape conviction. Further, the trial court's error was not harmless.

Remanded for resentencing; otherwise affirmed.

Clara L. Rigmaiden, Judge.

Kali Montague, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Remanded for resentencing; otherwise affirmed.

**ARMSTRONG, P. J.**

For one of defendant's two first-degree rape convictions, the trial court imposed a 300-month prison term under ORS 137.690, which provides for that imprisonment term if a defendant has a prior conviction, which includes a conviction in the same sentencing proceeding if the conviction is for a separate criminal episode. Over defendant's objection, in which he argued that the jury had to make a finding that the criminal episodes were separate, the trial court made the finding that they were and imposed the 300-month prison sentence. On appeal, defendant renews his challenge that the jury, rather than the trial court, was required to make the finding that the two rape convictions arose out of separate criminal episodes before the trial court could impose the 300-month prison sentence. As we explain, under *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), defendant had the constitutional right to have a jury make the finding that the second rape conviction arose from a criminal episode that was separate from the criminal episode that gave rise to the first rape conviction. The trial court therefore erred in making that finding. Further, we conclude that the error was not harmless.[1] We remand for resentencing.[2]

Our discussion of the *Apprendi* challenge has two parts. First, we discuss whether the *Apprendi* rule applies to defendant's circumstances and, second, after concluding that it does, we turn to whether the trial court's error was harmless.

We turn to defendant's argument that, under the rule announced in *Apprendi*, a jury, not the trial court, was

---

[1] Our conclusion that *Apprendi* applies and that the trial court's error is not harmless obviates the need to address defendant's assignment of error in which he argues that the trial court plainly erred in finding that the rape convictions arose out of separate criminal episodes.

[2] Defendant, who did not object to the trial court's nonunanimous jury instruction, raises a plain-error challenge to the jury's guilty verdicts, for which there was no poll. We reject that challenge for the reasons stated in *State v. Dilallo*, 367 Or 340, 478 P3d 509 (2020).

Defendant also challenges the trial court's imposition of a lifetime post-prison supervision (PPS) term. The state concedes that it was plain error for the trial court to impose lifetime PPS. Given that we are remanding for resentencing, we need not resolve the asserted sentencing error.

required to make the factual finding that the two rape convictions arose out of separate criminal episodes. As to the facts, for this part of the discussion, it suffices to say that the state charged defendant with raping two women, J and A, alleging that defendant raped A by forcible compulsion and that defendant raped J while she was incapacitated. The rapes occurred during one night in a single apartment, the charges were tried together, and defendant was convicted of those rape charges. For the Count 1 rape conviction, the court sentenced defendant to 100 months' imprisonment under ORS 137.700(2)(a)(K) (a Measure 11 sentence) and, for the Count 2 rape conviction, the court sentenced defendant to 300 months' imprisonment under ORS 137.690 (a Measure 73 sentence).

ORS 137.690 provides:

"a.   Any person who is convicted of a major felony sex crime, who has one (or more) previous conviction of a major felony sex crime, shall be imprisoned for a mandatory minimum term of 25 years.

"b.   'Major felony sex crime' means rape in the first degree (ORS 163.375), sodomy in the first degree (ORS 163.405), unlawful sexual penetration in the first degree (ORS 163.411), or using a child in a display of sexually explicit conduct (ORS 163.670).

"c.   'Previous conviction' includes a conviction for the statutory counterpart of a major felony sex crime in any jurisdiction, and includes a conviction in the same sentencing proceeding if the conviction is for a separate criminal episode as defined in ORS 131.505."

ORS 131.505(4) provides:

"'Criminal episode' means continuous and uninterrupted conduct that establishes at least one offense and is so joined in time, place and circumstances that such conduct is directed to the accomplishment of a single criminal objective."

In this case, defendant's first-degree rape convictions qualify under ORS 137.690(b) as major felony sex crimes; the second rape conviction occurred in the same sentencing proceeding as the first, ORS 137.690(c); and the trial court found that the second rape conviction was for a criminal episode that

was separate from the criminal episode that gave rise to the first rape conviction.

Relying on the rule announced by the United States Supreme Court in *Apprendi*, defendant argues that the trial court was not permitted under the Sixth Amendment to the United States Constitution to make the finding that the first-degree rapes occurred during separate criminal episodes. In *Apprendi*, the defendant was convicted of unlawful possession of a weapon and sentenced under a hate-crime statute that authorized a prison sentence longer than the ordinary sentence for the weapon-possession crime. 530 US at 468-69. The Court considered whether, under the Sixth Amendment, the defendant was entitled to have a jury make the finding that qualified him for the hate-crime sentence. *Id*. at 476. The Court made clear that the jury right does not apply to the longstanding discretion afforded to trial courts when imposing a judgment *within the sentencing range* that a statute sets out. Not longstanding, observed the Court, were legislative schemes that remove from the jury a fact determination that, if found, exposes a criminal defendant to a penalty that goes beyond the maximum sentence the defendant "would receive if punished according to the facts reflected in the jury verdict alone." *Id*. at 482-83. In that case, the Court held that, other than the fact of a prior conviction, a jury must find—beyond a reasonable doubt— any fact that increases a crime's penalty beyond the prescribed statutory maximum. *Id*. at 490. Further, in *Blakely v. Washington*, 542 US 296, 303, 124 S Ct 2531, 159 L Ed 2d 403 (2004), the Court said that the "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Emphasis omitted.)

Here, defendant contends that the conviction on Count 1 does not come within the prior-conviction exception of the *Apprendi* rule. Defendant points out that the prior-conviction exception is limited to facts that "the judicial record conclusively establishes." *State v. Bray*, 342 Or 711, 723, 160 P3d 983 (2007). Defendant also points out that, when the state relies on the prior-conviction exception for a conviction that was established in the same jury trial as the offense being sentenced, the prior-conviction exception

must rely on facts that the jury has already found. *State v. Cuevas*, 358 Or 147, 157, 361 P3d 581 (2015). Defendant contends that the trial court improperly relied on its own factfinding rather than any facts found by the jury to determine that the convictions arose out of separate criminal episodes before it imposed a 300-month sentence under ORS 137.690. That factfinding by the trial court, defendant argues, ran afoul of the *Apprendi* rule.

Not so fast, responds the state. In the state's view, the *Apprendi* rule has been limited by decisions from the United States Supreme Court and the Oregon Supreme Court, namely, *Oregon v. Ice*, 555 US 160, 129 S Ct 711, 172 L Ed 2d 517 (2009), and *Cuevas*, and the factfinding required for a separate criminal episode falls outside the *Apprendi* rule because the rule applies only to sentence-enhancement provisions, *i.e.*, those provisions that *increase* a crime's penalty beyond the prescribed statutory minimum. The state argues that this is a situation in which the default or presumptive sentence is the 300-month prison sentence imposed under ORS 137.690 and that the factual finding concerning whether there were separate criminal episodes is one that "mitigates or limits the application of that sentence."

In *Ice*, the Court addressed, in light of *Apprendi*, this state's approach of having a trial court—and not a jury—find the facts required to impose consecutive, rather than concurrent, sentences for multiple convictions. *See* ORS 137.123 (a trial court can only impose consecutive sentences for separate convictions arising out of continuous and uninterrupted course of conduct upon certain findings made by the court). The Court limited the reach of *Apprendi*, holding that it would not extend its jury-requirement rule beyond "the imposition of sentences for discrete crimes." 555 US at 168. That is, the *Apprendi* rule does not apply to factual findings necessary to impose sentences consecutively, resulting in an increased aggregate sentence. *Id*.

In *Cuevas*, the Oregon Supreme Court considered whether *Apprendi* applied to two sentencing rules. The two rules at issue there were (1) a rule limiting the length of a consecutive sentence that a trial court can impose, OAR 213-012-0020(2), and (2) a rule directing trial courts to count

a defendant's convictions at the time of sentencing when calculating a defendant's criminal history, OAR 213-004-0006(2). *Cuevas*, 358 Or at 149. The court determined that neither rule implicated the constitutional limits announced in *Apprendi*.

As for OAR 213-012-0020(2), the court concluded that the factual finding on which the defendant's argument relied did not increase his sentence. That is, under OAR 213-012-0020(2), individual sentences, running consecutively, add up to an aggregate consecutive sentence, and the only function that the rule serves is to limit the aggregate-sentence length that the trial court would otherwise impose. *Cuevas*, 358 Or at 158. Consequently, because *Apprendi* applies only to factual findings that *increase* a defendant's sentence, the application of OAR 213-012-0020(2) to decrease a sentence was not subject to *Apprendi*. *Id*. As for OAR 213-004-0006(2), a single-criminal-episode finding *decreases* a defendant's criminal history score and the resulting sentence by not counting a conviction that otherwise would be included in the defendant's criminal history. *Id*. at 168. The court concluded that *Apprendi* does not apply to the rule because it reduces the criminal history score and therefore decreases the defendant's sentence. *Id*.

In the state's view, the structure of ORS 137.690(a) and (c) is similar to the rules that were at issue in *Cuevas* because a defendant is subject to 300 months' imprisonment on a second conviction in a single case unless the court finds that the defendant committed that offense during the same criminal episode as the first. That is, the presumptive sentence is the prescribed 300 months' imprisonment, and the factual finding at issue *limits* the application of that presumptive sentence. Defendant replies that ORS 137.690 does nothing of the sort; rather, it is a sentence-enhancement statute. The presumptive sentences for the major felony sex crimes that ORS 137.690 includes are Measure 11 sentences (ORS 137.700) that are imprisonment for either 100 months or 70 months. In this case, defendant points out that the Measure 11 sentence is 100 months and that the application of ORS 136.690 increased the sentence for the second of two first-degree rape convictions upon a factual finding that "the conviction is for a separate criminal episode." ORS 137.690(c).

We agree with defendant. *First*, we have previously described ORS 137.690 as imposing "an *enhanced sentence*" on persons who commit a second major felony sex crime. *State v. Carey-Martin*, 293 Or App 611, 624-25, 430 P3d 98 (2018) (emphasis added). The voters themselves saw Measure 73 as something that increased minimum sentences for the worst sex crimes. *Id*. at 668 (James, J., concurring) ("The Oregon Voters' Pamphlet listed the Measure 73 ballot title as 'Requires increased minimum sentences for certain repeated sex crimes, incarceration for repeated driving under influence.'" (Quoting Official Oregon Voters' Pamphlet, General Election, Nov 2, 2010, 54.)). Although, in *Carey-Martin*, we were not considering the *Apprendi* rule, it is notable that both we and the voters naturally viewed ORS 137.690 as a statute that increases the penalty when there is more than one major felony sex crime conviction.

*Second*, the "separate criminal episode" finding under ORS 137.690 is different from the findings addressed in *Cuevas*. In *Cuevas*, the court construed OAR 213-004-0006(2) to mean that a finding by the trial court that there was a *single* criminal episode reduced the defendant's criminal history, resulting in reduced sentence. 358 Or at 167-68 (construing OAR 213-004-0006(2) as a rule in which "each prior conviction will be counted as part of a defendant's criminal history subject to an exception for convictions that arose out of the same criminal episode" and that finding the exception consequently results in a reduced criminal history score and sentence). The opposite is true for ORS 137.690, which requires a finding of separate criminal episodes, resulting in an increased sentence. As for OAR 213-012-0020(2), that rule applies only when a sentencing court orders sentences to run consecutively, and the "only function" that the rule "serves is to limit the length of the aggregate sentence that the trial court otherwise would impose." *Cuevas*, 358 Or at 158. Here, a sentence imposed under ORS 137.690 is an individual sentence, not an aggregate sentence.

Any resemblance that ORS 137.690 has to the rules at issue in *Cuevas* is superficial. ORS 137.690 is a sentencing statute that increases the mandatory prison term for a major felony sex crime of first-degree rape by 200 months. In

this case, the trial court made the finding that the two rape convictions were for conduct that occurred during separate criminal episodes, and that finding increased defendant's sentence. However, there are no facts in the jury verdicts alone or any admission by defendant that supports a finding that there were separate criminal episodes. *Blakely*, 542 US at 303. Under *Apprendi*, which requires a jury finding for facts that increase the prescribed statutory maximum, the jury was required to make the finding that the rape convictions were for separate criminal episodes. The trial court erred in concluding otherwise.

The state next argues that, even if the trial court erred by deciding whether the rapes occurred during separate criminal episodes, the error was harmless. *See Bray*, 342 Or at 724-25 (the United States Supreme Court has held that an *Apprendi* error is subject to harmless-error analysis, and a violation of a defendant's federal constitutional right is harmless when it is harmless beyond a reasonable doubt).

Reciting the facts in detail would be of no benefit to the bar, the bench, or the public. It suffices to say that, at trial, there was testimony that defendant met one of the victims, J, at a bar in Eugene, went with J and her friend to J's friend's apartment, and, during the course of the night raped J and another woman, A, in the apartment. The state also charged defendant with third-degree sexual abuse of two other roommates in the apartment, W and M. During the state's closing arguments, the prosecutor argued that defendant

> "took advantage of the situation, exploited that situation, and used it as an opportunity to systematically, carefully move his way through the girls' apartment, all four rooms, touching their bodies, intimate parts of their bodies, and violating them in a manner you've heard them describe to you ***."

Later, the prosecutor asserted that defendant was gauging accessibility of the victims and their vulnerability, "helping himself, moving down the line." The prosecutor added, "And so what does he have to do? I'm going to hang out on the couch. I'm going to hang out there for a little bit because we don't know what's going on with these rooms." The prosecutor

further explained that defendant formulated his plan from the time the bar closed:

> "[W] has no memory and walks right out of the place and leaves them—he has no idea where they live. He's got one on the way, drunk on his back and he's got to follow [W]. She can walk. That's how he follows her.
>
> "He doesn't know how else to get to the apartment to get to the—where these girls lived, to get to a place of privacy, to get into their bedroom, to get on the bed and to forcibly rape [J] and [A] and go into the other two rooms and touch those women and violate their bodies. It's because [W] could walk. She had to, right? He's got to follow her to that place to gain accessibility."

The jury found defendant guilty for raping A and J but acquitted defendant of sexual abuse of W and M.

Turning to the state's harmlessness argument, the state argues that the trial court's error was harmless because no reasonable juror could find that the rapes took place during a single criminal episode. The state argues that the two rape convictions did not have a "single overarching, long-term objective" because the rapes were the result of separate objectives and that defendant's conduct was not "continuous and uninterrupted" because each rape was a discrete crime. Defendant responds by pointing to the state's theory of the case at trial—that defendant used his presence in the apartment to exploit the victims' vulnerabilities and systematically move his way through the apartment—and argues that he had the criminal objective to commit opportunistic sexual assaults of the women in the apartment. Given that, in defendant's view, the trial court's error is not harmless because the state has not established beyond a reasonable doubt that "no reasonable juror could draw any conclusions other than" that the rape convictions were part of separate criminal episodes. *Bray*, 342 Or at 725-26.

As for assessing whether a reasonable juror could find beyond a reasonable doubt that the rapes were not part of separate criminal episodes, ORS 131.505(4) requires that the conduct be (1) "continuous and interrupted" and (2) "directed to the accomplishment of a single criminal objective." *State v. Taylor*, 293 Or App 460, 466, 428 P3d 939 (2018).

To begin with, we reject the state's contention that no juror could find that defendant's conduct was not "continuous and uninterrupted." In particular, the state's argument that "one crime being committed and ending before he chooses to commit the same crime again" means that the events of that night were not continuous and uninterrupted is not supported by the case law. A "mere gap in time" is not sufficient to establish noncontinuous or interrupted conduct. *State v. Tooley*, 265 Or App 30, 43, 333 P3d 348, *rev den*, 356 Or 575 (2014) (that there was a 12-hour gap between two killings committed as a way to take over drug business did not mean that the conduct was not continuous and interrupted). Nor are separate victims or acts sufficient. *See id*.; *State v. Witherspoon*, 250 Or App 316, 333 P3d 348 (2012) (concluding that defendant's physical and emotional abuse throughout the course of the night was "continuous and uninterrupted"). In this case, the record supports, and the state argued, that defendant had a plan to systematically exploit the vulnerabilities of the apartment's occupants. A reasonable juror could find that the defendant's conduct was in furtherance of that plan, and that nothing interrupted it.

Second, we also are not persuaded that no reasonable juror could find that defendant had a single, overarching criminal objective. The case law instructs that a criminal objective "refers to the pursuit of some object or attainment of some goal beyond the successful commission of the acts at issue." *State v. Burns*, 259 Or App 410, 429, 314 P3d 288 (2013) (internal quotation marks omitted); *see, e.g., State v. Kautz*, 179 Or App 458, 467, 39 P3d 937, *rev den*, 334 Or 327 (2002) (rejecting the state's assertion that a burglary and a robbery were not directed at the same criminal objective because earlier objective to steal victim's property continued during the course of events); *Taylor*, 293 Or App at 467 (concluding that counts of coercion and felony assault had the common objective of harassing and injuring the victim). It is also important to keep in mind that the state cannot "parse criminal objectives too finely, such as by distinguishing between various motivations behind a particular course of conduct." *State v. Wilder*, 305 Or App 618, 627, 471 P3d 798 (2020), *rev den*, 367 Or 535 (2021). Also, consideration of the "time, place, and circumstance" bears on a finding

of single, overarching objective. *Taylor*, 293 Or App at 468 (that crimes occurred over the course of a single night in or near a single apartment were part of ongoing domestic violence supported a single criminal objective); *Burns*, 259 Or App at 430 ("[T]he standard is not whether there is any difference in time and space at all, but whether there is enough of a difference in time, place, and circumstances surrounding the different acts to show that defendant's conduct was directed toward separate criminal objectives.").

In this case, we cannot say that no reasonable juror could find that defendant had a single criminal objective during the night that he committed the rapes. A juror could have been swayed by the state's theory of the case and, for example, found that defendant had, when leaving the bar or at the beginning of his presence in the apartment, an objective to exploit the situation to commit sexual assaults against multiple women, or could have found that the systematic plan was for the purpose of achieving nonconsensual sexual gratification. Further, the time, place, and circumstances could permit a reasonable juror to find that the two rape convictions were in furtherance of a single criminal objective. That is, the crimes occurred in a single apartment over the course of a few hours, under circumstances that a juror could find to reflect a systematic plan. Although the jury could have found otherwise, we cannot say that it would have had to do so as a matter of law. Because we conclude that a reasonable juror could find that the rapes were not part of separate criminal episodes, the trial court's error was not harmless.

Remanded for resentencing; otherwise affirmed.