512 March 13, 2024 No. 176

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

EDWARD AUGUSTUS BLAKE,
*Defendant-Appellant.*

Lane County Circuit Court
19CR63814; A178252

Charles M. Zennaché, Judge.

Submitted January 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Emily P. Seltzer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for first-degree rape and first-degree sodomy, crimes that he committed against the victim after she became incapacitated and physically helpless because defendant drugged her into unconsciousness.[1] He raises six assignments of error. We affirm.

*Election on factual occurrences:* In his first two assignments of error, defendant challenges the state's failure to elect pretrial which factual occurrences supported each charge and the trial court's failure to *sua sponte* instruct the jury that it must concur on which incident supported each charge. As to the first claim of error, defendant invited the error. Before trial, defendant filed a motion to elect acts that constituted the alleged crimes. In response, the state argued that the recording of the grand jury proceedings, in which the victim described "specific acts[,]" put defendant on notice as to the acts that underlay the charges. The state asked the court to allow the state to wait until the close of its case to make the election.

Defendant then agreed that if the state was representing that the acts that it was relying on were the ones "discussed in grand jury, great." He elaborated that if "the acts that [the victim] discussed at grand jury are the acts that—that they're calling criminal conduct, then I think they've made their election, and the defendant is on notice." Defendant explained that he was concerned about acts being raised at trial that were "not charged throughout the discovery," but again stated that the grand jury proceedings gave defendant "notice *** of what acts are criminal, and we can move forward." The trial court, after taking the motion under advisement to listen to the grand jury testimony, denied the motion.

Thus, defendant repeatedly assured the court that because the state was relying on the testimony from the grand jury proceeding, the state had made its election, defendant was on notice, and the court and parties could "move

---

[1] The jury acquitted defendant of one count each of first-degree rape and first-degree sodomy, and the court dismissed several other counts at the state's request.

forward" to other matters. On appeal, defendant argues that the trial court erred in failing to require the state to elect which act it would rely on for each count before trial. But in light of his statements to the trial court described above, the error that he claims on appeal was invited. *See State v. Kammeyer*, 226 Or App 210, 214, 203 P3d 274, *rev den*, 346 Or 590 (2009) (invited error doctrine applies when a party has "invited the trial court to rule in a particular way under circumstances that suggest that the party will be bound by the ruling or will not later seek a reversal on the basis of that ruling").

We also reject defendant's related claim of error, that the trial court was required to *sua sponte* give the jury a concurrence instruction. Even if, as defendant suggests, the error is plain and not harmless, we will not exercise our discretion to correct it. In determining whether to exercise our discretion, "we must balance the gravity of any error, in the context of the nature of the case, against *** other factors," including "whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error." *State v. Inman*, 275 Or App 920, 928, 936, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) (internal quotation marks and citation omitted). In determining whether any error was grave, we consider the likelihood that the error affected the outcome of the proceeding below. *State v. Ramirez*, 343 Or 505, 513, 173 P3d 817 (2007).

The necessity of jury concurrence is not a new legal concept. To the contrary, it has long been imbedded in the law. *See State v. Rodriguez-Castillo*, 210 Or App 479, 501, 151 P3d 931 (2007), *rev'd on other grounds*, 345 Or 39, 188 P3d 268 (2008) (declining to exercise discretion because jury concurrence requirement was long established). In fact, defense counsel appeared to be aware, at least to some degree, of the importance of concurrence when they asked, pretrial, to have the state elect which incidents constituted which crimes.[2] Had defendant renewed that objection at trial, the

---

[2] Indeed, that defendant did not re-raise this issue at trial suggests that his decision not to raise the issue was a strategic decision. *See Rodriguez-Castillo*, 210 Or App at 501 (relying on fact that counsel may have made a strategic

court could have easily avoided any potential error. *See id.* (declining to exercise discretion where error could have been easily avoided).

Moreover, it is unlikely that any error affected the proceedings below. The state charged defendant with two counts of rape and two counts of sodomy, the victim testified as to two distinct incidents of each crime, and the state expressly relied on those four incidents—and only those four incidents—in its closing arguments, all of which reduces the potential for jury confusion. Defendant's primary theory of why a concurrence instruction was necessary is that the jury could have convicted defendant based on videos of the defendant and the victim having what defendant describes as "one act of anal sex" and "one act of vaginal sex." The videos, which defendant himself introduced at trial, were filmed in August 2017. The state addressed the videos in closing and noted that the victim had *not* described the incidents depicted in the videos as the instances in which defendant had raped and sodomized her; the state expressly asked the jury to consider "only those events" that the victim described in her testimony. Not only that, but the victim testified that the assaults occurred much later than August 2017 (the date of the videos), towards the middle to end of their two-year relationship, which ended in 2019. To the extent that defendant believes that those videos created a concurrence issue, we are unpersuaded that they would have impacted the outcome and are unwilling to exercise our discretion to remedy a theoretical problem that defendant himself created by offering the videos into evidence.

*OEC 403:* Pretrial, defendant challenged admission of evidence that defendant stole drugs from a hospital (that he then used to drug the victim), arguing that that evidence was inadmissible under OEC 404(3) and unfairly prejudicial under OEC 403. Defendant had access to the drugs by way of his job as a paramedic, and defendant argued that evidence that he stole drugs from a hospital was unfairly prejudicial because he was a paramedic, a "position of trust[.]" The trial court admitted the evidence under OEC 404(3) as relevant

---

decision not to object as a consideration in refusing to reach an unpreserved jury-concurrence claim).

to defendant's plan, preparation, motive, and opportunity, and concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under OEC 403. On appeal, defendant challenges only the OEC 403 ruling.

We review the trial court's ruling under OEC 403 for abuse of discretion, *State v. Brown*, 272 Or App 424, 431, 355 P3d 216, *rev den*, 358 Or 145 (2015), and conclude that the court did not abuse its discretion. OEC 403 allows relevant evidence to be excluded only where "its probative value is substantially outweighed" by, as relevant to defendant's claim on appeal, the risk of unfair prejudice. Evidence carries a risk of unfair prejudice if it "improperly 'appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact.'" *State v. Shaw*, 338 Or 586, 614, 113 P3d 898 (2005) (quoting *State v. Barone*, 328 Or 68, 87, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000)).

We have reviewed the record and the trial court's ruling. Given the relevance of the evidence, we cannot conclude that the court abused its discretion in concluding that the probative value of the evidence was not substantially outweighed by its risk of unfair prejudice.

*Sentencing:* Defendant raises three claims of error with respect to his sentences, the first two of which are related. In his fourth and fifth assignments of error, defendant argues that the trial court erred in imposing a 25-year sentence on his first-degree sodomy conviction because that sentence was only permissible if (1) the state alleged or provided notice to defendant that that crime arose out of a separate criminal episode from the first-degree rape offense, as required by ORS 137.690 and (2) if the trial court instructed the jury as to the definition of separate criminal episode. Because neither of those things happened, defendant claims his sentence is unlawful. He acknowledges that he did not preserve either claim of error but asks that we review them as plain error. We decline to do so.

ORS 137.690 mandates a 25-year prison term for a major felony sex crime where the defendant has a previous

conviction for a major felony sex crime. And when the previous conviction is sentenced as part of the same proceeding, that conviction must have occurred during a separate criminal episode. ORS 137.690(c). ORS 131.505, in turn, defines separate criminal episode. Defendant argues, and the state agrees, that defendant was entitled to have a jury determine whether his major felony sex crime arose from a separate criminal episode. *State v. Thornsberry*, 315 Or App 287, 288, 501 P3d 1 (2021) (so concluding). And because defendant was entitled to have that fact be found by a jury rather than a judge, the state was required to give defendant advance notice—notice that defendant now claims he did not have—that it intended to rely on that fact to increase his sentence, ORS 136.765. *State v. Frinell*, 290 Or App 296, 301, 414 P3d 430 (2018).

Yet any error in not providing defendant notice does not appear on the face of the record. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991) ("[T]he reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable."). Notably, ORS 136.765(2) does not require the state to file notice with the court; rather, the notice must be provided "to the defendant." *See State v. Alexander*, 255 Or App 594, 600, 298 P3d 55 (2013) (differentiating between providing notice to the court and notice to the defendant and emphasizing that ORS 136.765(2) requires the latter). Thus, the fact that there is no notice in the trial court record does not mean that the state failed to provide defendant with notice. Of course, it is also possible that that did not occur. But in the plain error context, we cannot conclude that any error under ORS 136.765(2) is apparent.

As to defendant's fifth assignment of error, in which he contends that the trial court plainly erred in failing to instruct the jury as to the definition of a separate criminal episode in ORS 131.505, any error was harmless. In a similar context, we have deemed the lack of an instruction on the definition to be harmless where the record is clear that the offenses occurred in different incidents. *See State v. Cuevas*, 263 Or App 94, 114-15, 326 P3d 1242 (2014), *aff'd on*

*other grounds*, 358 Or 147, 361 P3d 581 (2015). As described above, the victim testified to separate incidents on separate days, descriptions that the state emphasized, in its closing arguments, as having occurred on four separate days. And, as we did above, we disagree that the videos that defendant offered into evidence alters that conclusion.

In his sixth assignment of error, defendant contends that the 25-year sentence that the trial court imposed is constitutionally disproportionate under both the state and federal constitutions. Below, defendant preserved his state-constitutional claim but raised no argument under the federal constitution and, on appeal, does little to develop his federal constitutional argument beyond what he argues under the Oregon Constitution. We therefore confine our analysis to the Oregon Constitution.

Whether a sentence is disproportionate involves consideration of three factors: "(1) a comparison of the severity of the penalty and the gravity of the crime; (2) a comparison of the penalties imposed for other, related crimes; and (3) the criminal history of the defendant." *State v. Rodriquez/Buck*, 347 Or 46, 58, 217 P3d 659 (2009). The trial court considered each of those factors and concluded that the two offenses for which the jury found defendant guilty were "two of the most serious" and that in committing those crimes, defendant used his position of authority, used his access to drugs, and used the victim's vulnerability to "get the thing that he wanted." The court acknowledged that the 25-year sentence is "amongst the *** longest sentences" allowed but that the presumptive sentence for each crime, were ORS 137.690 not to apply, was 100 months. The court noted that defendant had no criminal history and that, in considering the three factors, the 25-year sentence would not violate the Oregon Constitution.

Having reviewed the factors and the trial court's application of those factors, we agree with the trial court that the sentence is not disproportionate. Defendant points to defendant's lack of criminal history and the two-year consensual relationship between the parties. As the state observes, whether defendant and the victim had a consensual relationship is immaterial, given that a jury found that

defendant raped and sodomized the victim while she was incapacitated and therefore unable to consent. Moreover, "a lack of prior convictions alone has never been found to be enough to render an otherwise constitutional penalty disproportionate." *State v. Lara-Vasquez*, 310 Or App 99, 110, 484 P3d 369, *rev den*, 368 Or 561 (2021).

Affirmed.